PEOPLE v. DWYER et al.

(Supreme Court, Appellate Division, First Department. February 6, 1914.)

1. MONOPOLIES (§ 29*)—OFFENSES—INTENT.

Where in a prosecution for conspiracy to commit an act injurious to trade or commerce, in violation of Penal Law (Consol. Laws, c. 40) § 580, it appeared that defendants' acts in connection with certain associations brought about a complete monopoly in the purchase and sale of live poul-

try in the city of New York, and destroyed competition, by fixing and controlling the price at which such poultry was bought and sold, and there was also evidence that the associations took combined action to destroy the business of independent dealers, it sufficiently showed a criminal intent.

[Ed. Note.—For other cases, see Monopolies, Cent..Dig. § 19; Dec. Dig. § 29.*]

2. MONOPOLIES (§ 10*)—STATUTES—IMPLIED REPEAL—CONSPIRACY TO MONOPOLIZE.

Penal Law (Consol. Laws, c. 40) § 580, providing that if two or more persons conspire to commit an act injurious to trade or commerce they shall be guilty of a misdemeanor, etc., was not repugnant to General Business Law (Consol. Laws, c. 20) §§ 340, 341, providing that every contract or combination whereby a monopoly in the sale of any article of common use is created, or whereby a competition in the supply or price is or may be restrained or prevented, is against public policy and void, and that every person who makes such an agreement shall be guilty of a misdemeanor, and on conviction shall be punished by a fine not exceeding $5,000 or imprisonment, or both; each being directed toward a different act, and hence the adoption of the latter did not impliedly repeal the former.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 9; Dec. Dig. § 10.*]

3. INDICTMENT AND INFORMATION (§ 108*)—REQUISITES—STATUTES—DESIGNATION.

It is not necessary that the statute under which a prosecution is being conducted should be specified in the indictment; it being sufficient that the specific acts alleged are such as to bring the case within a criminal statute.

[Ed. Note.—For other cases, see Indictment and Information; Cent. Dig. §§ 284, 285; Dec. Dig. § 108.*]

4. MONOPOLIES (§ 31*)—INDICTMENT—STATUTES.

Penal Law (Consol. Laws, c. 40) § 580, provides that if two or more persons conspire (1) to commit a crime, or (6) to commit an act injurious to trade or commerce, each shall be guilty of a misdemeanor. General Business Law (Consol. Laws, c. 20) § 340, provides that every contract or combination whereby a monopoly in the sale of an article of common use is or may be created shall be against public policy and void, and section 341 declares that every person making or attempting to make such agreement shall be guilty of a misdemeanor. An indictment alleged that defendants formed a pool of the receivers, jobbers, and slaughterhouse men engaged in the live poultry business in the New York market; that they pooled their commissions to the end that the same might be divided among them in certain proportions fixed by their articles of association, and by means of a further agreement with a jobbers' association they controlled the live poultry business in the city of New York, the purpose of the two associations being to destroy competition and fix and maintain prices at which such poultry should be bought and sold. *Held*, that such indictment charged a violation of Business Law (Consol. Laws, c. 20) §§ 340, 341, and also a conspiracy to commit a crime under Penal Law (Consol. Laws, c. 40) § 580, subd. 1, and hence it was not material whether Penal Law, § 580, subd. 6, was repealed by the subsequent enactment of the sections of the business law.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 20; Dec. Dig. § 31.*]

5. MONOPOLIES (§ 31*)—OFFENSES—EVIDENCE—ENTRIES IN BOOKS.

In a prosecution of members of a poultry dealers' protective association for conspiracy to monopolize the live poultry business in the city of New York, entries in a book of account kept by the treasurer of a joint association who was also treasurer of a receivers' association, and who kept

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the book as a part of his official duties, in which was entered all sums received and disbursed by him as treasurer of the two associations, reciting, "End of the year. War will be declared now very soon," and immediately thereafter, "Three weeks' period of unrest," and, "War is over," were admissible as against such treasurer, and his co-conspirators in connection with other evidence that, about the time of the entries, active steps were taken by the associations to stifle competition, and that during such time the profits were somewhat diminished.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 20; Dec. Dig. § 31.*]

6. CRIMINAL LAW (§ 730*)—APPEAL—PREJUDICE—REMARKS OF COUNSEL.
    Defendants could not successfully urge remarks of the district attorney as error on appeal, where the remarks in the main were called out by the conduct of defendants' counsel and the jury were repeatedly instructed to disregard them.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1693; Dec. Dig. § 730.*]

Appeal from Court of General Sessions, New York County.

Erving V. Dwyer and others were convicted of conspiracy to commit acts injurious to trade and commerce, and from a sentence of each to imprisonment for three months, and to pay a fine of $500, they appeal. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Edward E. McCall and I. N. Jacobson, both of New York City, for appellants.

William A. De Ford, of New York City, for respondent.

McLAUGHLIN, J. This appeal is from a judgment convicting the appellants of the crime of conspiracy under section 580 of the Penal Law (Consol. Laws, c. 40). Nineteen defendants were jointly indicted, of whom eighteen were tried together. One was acquitted by direction of the court; four found not guilty; and the remaining thirteen, the present appellants, convicted and each sentenced to be imprisoned in the penitentiary for three months, and, in addition thereto, pay a fine of $500. The defendants were engaged in buying and disposing of poultry in the city of New York, and were indicted for having conspired to suppress competition to maintain and regulate the market price of the same. Prior to the formation of the pool hereinafter mentioned, this business was carried on in substantially the following way: The poultry was purchased by shippers, so called, from the producers; they shipped the same to receivers, who sold it on commission, to jobbers; they sold it to slaughterhouse men, who, in turn, killed and then sold it to the retailers. Nine of the defendants were receivers, eight of them jobbers, and two both receivers and jobbers. In June, 1906, the principal receivers of poultry in the New York market, including those who are defendants, formed the New York Live Poultry Dealers' Protective Association. This association was formed mainly for the purpose of pooling the commissions by all of the members, to the end that the same might be divided among them in a certain proportion fixed by the articles of association. Some time

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

prior thereto, for a similar purpose, the jobbers had formed the Jobbers' Association of West Washington Market, of which all the jobber defendants were members. After the formation of the former association, it entered into an agreement with the latter, by which their respective profits should, each week, be paid into a pool and then divided, first, between the two associations, and thereafter subdivided among their members. This agreement also provided that the members of the jobbers' association should purchase all of the poultry received by the members of the receivers' association, at a price to be fixed each week by the two associations. The agreement, in form, was to last only from week to week, but in fact was continued and acted upon until defendants were indicted, in March, 1910; changes being made from time to time as to the amount to be distributed. During a portion of the time, at least, the slaughterhouse men were included in the pool and participated in the profits. The purpose of combining the two associations was to destroy competition and fix and maintain the prices at which the poultry was bought and sold. The receivers who were in the pool controlled something like 90 per cent. of the poultry shipped to New York, while the jobbers included nearly all the large wholesalers in the market. So effective was the pool that competition was destroyed and poultry substantially bought and sold at the price fixed weekly by the two associations. Any attempt made by a person, either as receiver, jobber, slaughterhouse man, or dealer, not a member of the joint association or in some way connected with it or its members, to purchase and sell poultry at a price other than that fixed by the associations, was at once met by the strongest opposition. Among other methods employed, they would purchase all of the poultry intended to be shipped to an independent receiver, thus cutting off his supply; or, in case of a dealer, purchase his business; or, in case that could not be done, start a market in close proximity and undersell him. The result was that the joint action of the two associations destroyed competition and thereby fixed and controlled the price at which poultry was bought and sold—a monopoly as complete as their ingenuity could devise, and effective as combined action could make it.

[1] This fact was not seriously disputed at the trial, or upon the argument of the appeal. It was, however, strenuously urged that notwithstanding this may have been the result of the defendants' acts, as members of the associations referred to, nevertheless they were not criminally liable, since they had no criminal intent in what they did. One is presumed to intend the result of his own acts, and the defendants are not in a position to complain if they are judged by that standard. But the proof shows that the intent was criminal because at different times the association took combined action to destroy the business of independent dealers, whether receivers, jobbers, or slaughterhouse men, and their intent in doing so is as obvious as though specifically admitted. The formation of the joint association was one not sanctioned by law, created for an illegal purpose, and thereafter maintained by criminal methods.

[2] But it is said the judgment of conviction should be reversed for certain errors which in no way affect the merits. The principal

point urged in this connection is that the provision of the Penal Law (section 580) under which the indictment was drawn and the case submitted to the jury was not in force, since the same had been, by sections 340 and 341 of the General Business Law (Consol. Laws, c. 20), repealed by implication. The section of the Penal Law referred to provides, among other things, that:

"If two or more persons conspire (1) to commit a crime or * * * (6) to commit an act injurious * * * to tradè or commerce, * * * each of them is guilty of a misdemeanor."

Section 340 of the General Business Law was enacted subsequent to the enactment of section 580 of the Penal Law and provides that:

"Every contract, agreement, arrangement or combination whereby a monopoly in the manufacture, production or sale in this state of any article or commodity of common use is or may be created, established or maintained, or whereby competition in this state in the supply or price of any such article or commodity is or may be restrained or prevented, or whereby for the purpose of creating, establishing or maintaining a monopoly within this state of the manufacture, production or sale of any such article or commodity, the free pursuit in this state of any lawful business, trade or occupation is or may be restricted or prevented, is hereby declared to be against public policy and void."

And section 341 provides that every person who makes or attempts to make such agreement is guilty of a misdemeanor and on conviction shall be punished by a fine not exceeding $5,000, or by imprisonment for not longer than one year, or by both. These sections, it is conceded, do not, in terms, repeal section 580 of the Penal Law, nor in my opinion do they do so by implication. There is no repugnancy between the two statutes. ·Each can be enforced, and each, in a measure at least, is directed towards a different act. The Penal Law forbids a conspiracy to do any act injurious to trade, while the General Business Law prohibits the creation or attempt to create a monopoly; in other words, the General Business Law prohibits the doing or attempt to do the thing itself, regardless of the question of conspiracy, and the Penal Law can only be violated by two or more persons conspiring to bring about what is prohibited in the Business Law. To establish a conspiracy under the ·Penal Law some overt act must be shown (section 533 Penal Law), which is not necessary under the General Business Law. It is true the same act may be a crime under both statutes, but there is nothing to indicate that the Legislature intended to substitute one for the other. Besides, the repeal of a statute by implication is not looked upon with favor. As was said in Davis v. Supreme Lodge, 165 N. Y. 159, 58 N. E. 891:

"The leaning of the courts is so strong against repealing the positive provisions of a former statute by construction as almost to establish the doctrine of no repeal by implication. Where there is a difference in the whole purview of two statutes, apparently relating to the same subject, the former remains in force."

[3] But even if it were held that section 580 of the Penal Law were repealed by the sections of the General Business Law to which reference has been made, nevertheless I think this conviction could be sustained. It is not necessary that the section of the statute under which

a prosecution is being conducted should be named in the indictment. All that need be alleged in an indictment, and proved upon the trial, are the specific facts which bring any given case within the statute. People v. Miller, 143 App. Div. 251, 128 N. Y. Supp. 549, affirmed, 202 N. Y. 618, 96 N. E. 1125.

[4] Every fact necessary to show a violation of the Business Law was charged in the indictment under which the defendants were convicted; such facts were established at the trial; and it does not now lie with the defendants to complain that they were not convicted under that statute instead of under the Penal Law. The Business Law provides a greater punishment and requires less proof than does a conviction under section 580 of the Penal Law, so that if the appellants' contention were correct—which I do not think it is as to the repeal of this section—they were benefited rather than prejudiced by the conviction under the latter statute.

The conviction can also be sustained as one prosecuted under subdivision 1 of section 580 of the Penal Law as a conspiracy to commit a crime, viz., the one prohibited by the sections of the Business Law.

[5] It is also urged that error was committed in admitting in evidence certain entries in a book of account kept by the treasurer of the joint association, who was also treasurer of the receivers' association. The book was kept by him as part of his official duties. It showed all sums received and disbursed by him as treasurer of the two associations. It was admitted in evidence, and then the learned district attorney proceeded to question the treasurer as to three specific entries. Defendants' counsel moved to have those entries stricken from the record, which the court refused, and to which an exception was taken. I think the ruling was correct. The entries were: "End of the year. War will be declared now very soon"—which was written immediately after the regular entries for February 6, 1909. The next entry was, "Three weeks' period of unrest," written immediately before the entries for February 13th; and, "War is over," written after the entries for February 27th. There is at least some evidence in the record to the effect that about this time active steps were taken by the association to stifle competition and its profits were somewhat diminished, and this the jury had a right to consider, notwithstanding the treasurer testified that the entries were meaningless, inserted by him merely as "bookmarks," and that no one else, with the exception of his son, ever saw them. The treasurer was one of the co-conspirators. The entries were made by him in the records of the conspiracy. They were therefore admissible as against him and also against his co-conspirators. People v. McKane, 143 N. Y. 455, 38 N. E. 950; People v. Miles, 123 App. Div. 862, 108 N. Y. Supp. 510, affirmed 192 N. Y. 541, 84 N. E. 1117.

[6] Finally, it is claimed the defendants did not have a fair trial by reason of the misconduct of the district attorney in making certain remarks, especially in regard to defendants' counsel. The conduct of defendants' counsel was, in the main, responsible for the remarks, and defendants are not now in a position to complain thereof. Besides, the jury could not possibly have been influenced by them. It was in-

structed time and again to disregard them and to decide the issues solely upon the evidence.

Other points are raised by the appellants, but after an examination we find none of them which require consideration.

The judgment of conviction is therefore affirmed. All concur.