## COURT OF GENERAL SESSIONS — CITY OF NEW YORK.

### January, 1917.

## THE PEOPLE v. HARRY BAFF, ET AL.

(98 Misc. 547.)

GENERAL BUSINESS LAW, § 340—INDICTMENT FOR VIOLATION OF—MOTION
TO DISMISS GRANTED FOR INSUFFICIENCY OF ALLEGATIONS—RESUB-
MISSION OF CASE TO GRAND JURY.

An indictment charging a violation of section 340 of the General
Business Law must sufficiently allege either that defendants entered
into a contract or arrangement by which a monopoly was created
or competition restrained, or that they entered into a contract or
arrangement whereby those results might be attained.

An indictment for a violation of section 340 of the General Business
Law, after alleging that on a certain day defendants with other in-
dividuals and firms were engaged in competition with each other and
others not named in the business of buying at wholesale seventy-five
per cent of the live poultry bought in that part of the city of New
York in which they dealt; that certain of said defendants became a
domestic corporation for the pretended purposes of buying, selling
and otherwise disposing of live poultry, and that said defendants
became directors of and dominated the acts, agreements and business
of said corporation, charged that said defendants agreed that all live
poultry acquired, bought, used and kept for sale by each of them and
by the other individuals and firms mentioned should be purchased by
and through the corporation and that the defendants and the other
individuals and firms mentioned should sell such poultry only at prices
fixed and to be fixed by the said corporation and by said defendants.
The indictment did not allege that defendants were in any position
to influence, by persuasion or coercion, their other competitors to
assent to the proposed contract, nor did it allege that defendants had
any influence or control whatever over said competitors, or that the
combination was ever carried out. *Held*, that the indictment was
insufficient and that a demurrer thereto should be sustained.

As the objection on which the demurrer is allowed may be over-
come by a new indictment, the order sustaining the demurrer will
direct that the case be resubmitted to the same or another grand jury.

DEMURRERS filed by defendants, Baff, Werner, Sokoloff, Frank and Abelson, December 19, 1916, to an indictment charging them with a violation of section 340 of the General Business Law (the so-called Donnelly Act).

*Edward Swann, District Attorney (Robert S. Johnstone,* of counsel), for People.

*Koenig, Goldsmith & Sittenfield (Samuel S. Koenig,* of counsel), for defendants Werner, Sokoloff and Frank.

*Harry A. Gordon,* for defendant Baff.

*Harry W. Newburger,* for defendant Abelson.

NOTT, J.:

The indictment alleges that on the 19th day of July, 1916, the defendants (excepting the defendant Abelson), and forty-one other individuals and firms engaged in competition with each other and with others (not named) in the business of buying at wholesale live poultry and slaughtering and selling the same to retailing dealers in the city of New York, and that these forty-six individuals and firms bought seventy-five per cent. of the live poultry bought in that part of the city in which they dealt, and sold the same when slaughtered. After alleging that live and slaughtered poultry was a commodity in common use in said city, the indictment alleges that on the said 19th day of July, 1916, the defendants Werner, Sokoloff, Frank and Levy organized and incorporated under the laws of the State of New York and became an incorporation called the Harlem and Bronx Live Poultry Associates, Inc., for the pretended purpose of buying, selling and otherwise disposing of live poultry and that the defendants last named then became directors of said corporation and controlled and dominated its acts, agreements and busi-

ness, and that the said corporation was formed and organized to enable the defendants to make and carry out the unlawful contract and arrangement set forth in the indictment.

The indictment then alleges that on the 28th day of July, 1916, the defendants made and entered into a contract or arrangement whereby a monopoly for the sale of poultry might be created, established or maintained and whereby competition in the supply and price of poultry was and might be restrained and prevented, the contract being as follows, to wit: That the defendants agreed that all live poultry acquired, bought, used and kept for sale by each of the defendants and by the other forty-one individuals and firms mentioned earlier in the indictment should be purchased by and through the corporation, and that the defendants and the other forty-one individuals and firms mentioned should sell such poultry only at prices fixed and to be fixed by the said corporation and by the defendants Werner, Sokoloff, Frank, Levy and Abelson.

It is not alleged that part or a percentage of the trade in poultry was controlled by these defendants. It does appear by the indictment that the business of the defendants, plus the business of the forty-one other individuals and firms not concerned in the commission of the crime, amounted to seventy-five per cent. of the total business in poultry sought to be controlled. There is no allegation in the indictment that after the agreement of July 28, 1916, was entered into the defendants took any steps to persuade the other forty-one competitors to submit their business to the corporation or to submit to prices fixed by the defendants, much less that the forty-one other competitors did so agree.

There is no allegation in the indictment that the defendants were in any position to influence by persuasion or coercion the forty-one other competitors to assent to the proposed contract. For aught that appears to the contrary, on the face of the indict-

ment, the defendants may have been without any influence in the trade.

The indictment does not predicate the criminality of the defendants upon their agreement with each other of July 19, 1916; in fact the indictment itself shows that the six defendants could not, by an agreement among themselves only, have effected a monopoly or an undue restraint of trade as it appears that they, together with forty-one other competitors, controlled but seventy-five per cent. of the business. Therefore, their agreement with each other would not in and of itself be deemed an infraction of the statute within the doctrine laid down by the Supreme Court of the United States in United States v. Standard Oil Co. (221 U. S. 1), and United States v. American Tobacco Co. (id. 106).

The defendants' criminal liability is predicated upon the agreement of July 28, 1916, wherein they agreed *among themselves only* that forty-one other competitors should effect a combination with them. There is no allegation in the indictment that this combination was ever carried out. The agreement or arrangement, therefore, is not alleged to be one whereby a monopoly was created, or whereby competition was restrained. It was contended, however, that it was an arrangement or agreement whereby a monopoly might be created or competition might be restrained.

In my opinion, the mere fact that a contract is entered into to carry out a certain purpose does not of itself amount to an allegation that the contract may effect that purpose. For the sake of illustration, could it be said that a contract between two or three indigent tramps, by which they agreed that all the leading dealers in diamonds in the city of New York should sell their goods through them and subject to prices fixed by them, would be a contract or arrangement which might establish a monopoly or restrain competition in the diamond trade?

There is no allegation contained in the indictment showing,

or tending to show, that the defendants had any influence or control whatever over the forty-one competitors whom the defendants agreed should submit their business to them. To paraphrase certain language used by the court in United States v. Whiting (212 Fed. Rep. 466), as it does not appear from the indictment that the defendants had any power or control over the poultry trade, they could not create a monoply or restrain trade within the spirit of the Standard Oil and American Tobacco Company Cases, *supra*.

An indictment drawn for the violation of the Donnelly Act must sufficiently allege either that the defendant entered into a contract or arrangement by which a monoply was created or competition was restrained, or that they entered into a contract or arrangement whereby those results might be attained.

I do not think that this indictment sets forth facts showing either of those results, and the demurrers therefore must be sustained. While this decision represents my judgment upon the indictment in the light of the guidance I have obtained from the decisions on this subject, I am the more ready to make that decision because of the fact that by so doing the law on this point can be speedily settled by the appellate courts before trial.

As it is apparent that the objection on which the demurrer is allowed may be overcome in a new indictment, an order will be entered directing the case to be resubmitted to the same or another grand jury.

Demurrers sustained.