# COURT OF GENERAL SESSIONS — COUNTY OF NEW YORK.

## April, 1917.

# THE PEOPLE v. HARRY BAFF, LOUIS WARNER, MAX SEKELEFF, CHARLES S. FRANK, GOODMAN LEVY, and PAUL ABELSON.

### (99 Misc. 684.)

INDICTMENT—WHEN MOTION TO SET ASIDE WILL BE GRANTED—PLEADING—
    GRAND JURY—EVIDENCE—CRIMINAL LAW—GENERAL BUSINESS LAW,
    §§ 340, 341.

On granting a motion to set aside an indictment with leave to resubmit the charge to the grand jury, the same procedure should be followed as where a demurrer is sustained with like leave.

Where, upon sustaining a demurrer to an indictment under the "Donnelly-Anti-Trust Law" (General Business Law, §§ 340, 341), upon the ground that the acts charged in the indictment to have been committed by defendants did not construe a crime, an order was entered granting leave for the resubmission of the charge to the same grand jury and a new indictment is returned without the taking of any additional testimony, a motion to set aside the new indictment for failure of the grand jury to examine the witnesses anew before finding the new indictment will be denied.

Where, however, in the record of the proceedings before the grand jury which returned the new indictment, which charged in substance that defendants organized a corporation as a medium to monopolize the sale of live and slaughtered poultry and to fix the prices thereof in certain designated sections of the city of New York, there is an absence of legal evidence to support the allegations that four of the defendants, together with other persons mentioned in the indictment, controlled seventy-five per cent or upwards of the poultry business in the designated locality or that they had sufficient control therein of such business so as to bring their conduct within the condemnation of the statutes relating to illegal combinations, and the record does not disclose what part of said business was controlled by the defendants and the other persons mentioned in the indictment, and although

incompetent testimony was received, there was no competent evidence before the grand jury to connect defendants with the commission of the crime charged, a motion to set aside the indictment on the grounds that the evidence before the grand jury fails to show that defendants committed the crime charged in the indictment, and that incompetent testimony was received in support thereof, will be granted.

MOTION to set aside indictment.

*Samuel Markewich, Deputy Assistant District Attorney,* for People.

*Kohnig, Goldsmith & Sitterfield,* for defendants.

MULQUEEN, J.:

On December 5, 1916, the grand jury filed an indictment against the defendants charging them with the crime of making and entering into a contract, agreement and combination whereby a monopoly in the sale in this State of an article and commodity of common use was and might be created, established and maintained, and whereby competition in the supply and price of such article and commodity was and might be established and prevented.

The indictment was drawn under sections 340 and 341 of the General Business Law, popularly known as the Donnelly Anti-Trust Law. In substance it alleged that the five defendants organized a corporation as a medium to monopolize the sale of live and slaughtered poultry and to fix the prices thereof in Harlem and the Bronx of the city of New York, and that live and slaughtered poultry was an article and commodity of common use.

A demurrer was filed to this indictment upon the ground that the facts therein stated did not constitute a crime. My learned associate, Judge NOTT, in a very able opinion held that the indictment was bad, and sustained the demurrer. (People v. Baff, 98 Misc. Rep. 547.) Among other things he said:

" It is not alleged that part or a percentage of the trade in poultry was controlled by these defendants. It does appear by the indictment that the business of the defendants, plus the business of the forty-one other individuals and firms not concerned in the commission of the crime, amounted to seventy-five per cent. of the total business in poultry sought to be controlled. There is no allegation in the indictment that after the agreement of July 28, 1916, was entered into the defendants took any steps to persuade the other forty-one competitors to submit their business to the corporation or to submit to prices fixed by the defendants, much less that the forty-one other competitors did so agree. There is no allegation in the indictment that the defendants were in any position to influence by persuasion or coercion the forty-one other competitors to assent to the proposed contract. For aught that appears to the contrary, on the face of the indictment, the defendants may have been without any influence in the trade.

" The indictment does not predicate the criminality of the defendants upon their agreement with each other of July 19th, 1916; in fact the indictment itself shows that the six defendants could not, by an agreement among themselves only, have effected a monopoly or an undue restraint of trade as it appears that they, together with forty-one other competitors, controlled but seventy-five per cent. of the business. Therefore, their agreement with each other would not in and of itself be deemed an infraction of the statute within the doctrine laid down by the Supreme Court of the United States, in United States v. Standard Oil Company (221 U. S. 1), and United States v. American Tobacco Company (id. 106). * * *

" There is no allegation contained in the indictment showing, or tending to show, that the defendants had any influence or control whatever over the forty-one competitors whom the defendants agreed should submit their business to them. To paraphrase certain language used by the court in United States

v. Whiting (212 Fed. Rep. 466), as it does not appear from the indictment that the defendants had any power or control over the poultry trade, they could not create a monopoly or restrain trade within the spirit of the Standard Oil and American Tobacco Company Cases (*supra*)."

On January 19, 1917, the very day that the order was entered granting leave to the district attorney to resubmit the charge to the same grand jury, a new indictment meeting the defects pointed out in the opinion of Judge NOTT was filed by that body without taking any additional testimony.

The defendants attack the validity of the indictment under review by two separate motions, the first of which is based upon the ground that the same was found without any legal evidence to sustain it, in that the grand jury did not hear any witnesses, but relied upon the testimony given by the witnesses in the first proceeding; the second of which is based upon the grounds, among others:

A. That the facts are insufficient to constitute a crime;

B. That the indictment was found upon illegal and incompetent evidence.

To sustain the point made in the first motion, counsel rely on the case of State v. Ivey (100 N. C. 532), which supports their contention. I am, however, not inclined to follow that decision for the reason that it is too technical. It seems to me that it would be an idle ceremony for the same grand jury to rehear the same witnesses where it is of opinion that sufficient evidence was taken in the first proceeding to meet the objections which resulted in a demurrer being allowed to a defective indictment. I do not think it is an invasion of any of the constitutional rights of a defendant to permit the practice which was followed by the grand jury in this case.

My view of the matter is that convenience and expedition in the administration of the criminal law suggest not to condemn the course pursued by the grand jury in failing to re-examine

the witnesses, particularly where an indictment is filed for the same crime.

There is no substantial reason why the procedure, where a motion to set aside an indictment is granted with leave to re-submit the charge to a grand jury, should not be followed where a demurrer is laid to an indictment with leave to resubmit the charge. (Commonwealth v. Clune, 162 Mass. 206; Commonwealth v. Woods, 10 Gray, 447; State v. Peterson, 28 L. R. A. 324; Nordlinger v. U. S., 24 App. D. C. 406.)

If the minutes disclose that the record is destitute of sufficient proof to sustain the additional allegations of the new indictment or that the indictment was based upon illegal and incompetent testimony, a more serious question is presented.

In support of the second motion, it is urged by defendants that the indictment cannot be upheld for the reason that there is a total failure of legal proof to sustain the allegation in the indictment that the four defendants, above named, exclusive of the defendant Abelson, together with forty-one other individuals and firms mentioned therein, controlled seventy-five per cent. and upwards of the poultry bought, slaughtered and sold in Harlem and the Bronx of this city.

It is well settled, by the leading authorities, both federal and State, that the law does not affix the brand of condemnation upon any contract, agreement or arrangement unless it unreasonably or unduly restricts trade or commerce or unduly or unreasonably restricts competition in the supply or price of an article or commodity of common use or tends to produce such results. In other words, it must be shown that the parties who seek to control or monopolize the avenues of industry, in order to prevent free and unrestricted competition in business pursuits, have sufficient power to control or possess effective means to dominate the particular business in which they are engaged. (Standard Oil Company v. U. S., 221 U. S. 1; United States v. American Tobacco Co., Id. 106; People v.

Baff, 98 Misc. Rep. 547, opinion by Judge Nott; United States v. Whiting, 212 Fed. Rep. 466; State v. Eastern Coal Co., 29 R. I. 254; Marienelli v. United Booking Offices of America, 227 Fed. Rep. 165; People v. Dwyer, 160 App. Div. 542; affd., 215 N. Y. 46; People v. Sheldon, 139 id. 251; Cummings v. Union Blue Stone Co., 164 id. 401.)

I have carefully read the record of the proceedings before the grand jury and I fail to find any legal proof which supports the allegations of the indictment that the persons mentioned therein controlled seventy-five per cent. or upwards of the poultry business in the Harlem and The Bronx, or that they had sufficient control of the poultry business in that section of the city so as to bring their conduct within the condemnation of the law in relation to illegal combinations.

There is absolutely nothing in the record to show what part of the poultry business was controlled by the defendants and the other persons mentioned in the indictment. The percentage of business controlled by the defendant and the other persons is based upon conjecture and speculation, rather than upon facts.

The testimony of Mr. Morrison, one of the attorneys, who assisted in the organization of the Harlem Live Poultry Association, to the effect that a vast majority of the live poultry dealers in the section of the city hereinbefore referred to joined the association, is no legal proof that these persons controlled the poultry business in this vicinity. He evidently must have referred to a majority in number. As was said in Nat. Protective Assn. v. Cumming (170 N. Y. 321): " Mere numbers do not ordinarily affect the quality of the act. Whatever one man may do alone, he may do in combination with others, provided they have no unlawful object in view." It is possible that the parties to the present arrangement may have constituted a small proportion of the live poultry business and the

minority who did not join the association may have controlled a greater percentage or proportion of this business.

In United States v. Whiting (*supra*) the court said: "This indictment charges a conspiracy in restraint of trade. It does not contain the allegations of indictment No. 454 as to the percentage of milk sold in the country districts for shipment to the Boston and Worcester markets, which was bought by the defendants, nor any allegations from which it can be inferred that the defendants either controlled or were dominating factors in the buying market in the country or selling markets in those cities. For aught that appears, they may have been *unimportant factors in each one.*"

The testimony of Mr. Gordon, another attorney who assisted in the organization of the association above mentioned, in relation to the magnitude of the business controlled by it, was purely hearsay and should have been rejected by the grand jury, for the reason that Gordon specifically testified in answer to a question propounded by a grand juror as follows: "Now, gentlemen, what I have testified to was with respect to what happened every week. Of course, I don't know of my own knowledge. I am assuming that everything happened in accordance with the plan laid out. Whether it did or not, I don't know. I don't presume to know personally as to the principles of this operation."

Furthermore, if the acts of the defendants were to constitute a violation of the law, then Gordon and Morrison were clearly accomplices in the commission of a crime. Gordon testified that he conceived the scheme of the organization above mentioned and that he counselled and advised the defendants in their business affairs, and Morrison testified that he co-operated and was associated with him in the plan which brought the association into existence and that he also advised the defendants with reference to the management of their business. Likewise Nathan Neuman was an accomplice, for according to his testi-

mony he became one of the agents of the association and aided and assisted it in carrying out the plan which resulted in the indictment of the defendants.

These three witnesses, being accomplices, as a matter of law, it is necessary, therefore, to sustain the indictment that their testimony should be corroborated by other evidence tending to implicate the defendants in the unlawful combination.

After a most careful examination of the record, I am forced to the conclusion that there is no competent testimony to connect the defendants with the commission of the crime (if any crime was committed). (People v. O'Farrell, 175 N. Y. 323; People v. Becker, 215 id. 126.)

The testimony of Altman, a bookkeeper of the corporation with which the defendants were connected, that he had prepared from books of said corporation a summary showing the volume of business transacted, the expenses of the business, the gross profits, the net profits, and the balance in the treasury of the corporation, was clearly incompetent and upon no conceivable theory was such testimony admissible against the defendants who were the officers of the corporation, for the reason that no proper foundation was laid, establishing that the entries in the books were made with the knowledge of the defendants, or that they authorized or caused such entries to be made, or that they had some connection with the entries therein. (People v. Levis, 96 Misc. Rep. 513; Rudd v. Robinson, 126 N. Y. 113; People v. Burnham, 119 App. Div. 302; People v. Burnham, 120 id. 388.) It is, therefore, clear that in the absence of proper proof, not only are the book entries of a corporation not evidence against a director or stockholder thereof, but likewise a summary prepared from the books of a corporation is also incompetent evidence against an officer thereof.

For the reasons herein stated the motion to set aside the indictment for failure of the grand jury to examine the witnesses anew before finding the present indictment is denied, but

the motion to set aside the indictment upon the grounds that the evidence before the grand jury fails to show that the defendants committed the crime charged therein, and that incompetent testimony was received in support thereof, is granted.

Ordered accordingly.