## TOMMASI v. BOLGER et al.

(Supreme Court, Appellate Division, Second Department. July 24, 1906.)

1. MECHANICS' LIENS—ADVANCE PAYMENTS—VALIDITY—LIEN LAW.

Laws 1897, p. 517, c. 418, § 7, providing that any payment by the owner to a building contractor, made prior to the time when under the contract such payment becomes due to avoid the provisions of the act, shall be of no effect as against the lien of a subcontractor, laborer, or materialman, under such contract, created before such payment actually becomes due, does not render ineffective, as against the lien of subcontractors, etc., advance payments, unless made to avoid the provisions of the act.

2. SAME—CONCEALMENT—NOTIFICATION TO SUBSEQUENT LIENORS.

Under said section an owner making advance payments to a building contractor prior to the filing of subcontractors' liens, in order that the work might advance, is under no obligation to notify such subsequent lienors of such payments, and failure so to do is not proof of a purpose to avoid the provisions of the act.

3. SAME—SUFFICIENCY OF EVIDENCE.

Evidence in an action to foreclose mechanics' liens examined, and *held* insufficient to show that advance payments by the owner were made for the purpose of avoiding Laws 1897, p. 517, c. 418, § 7.

4. SAME—ORDERS FOR PAYMENT—FILING—NECESSITY.

Lien Law, Laws 1897, p. 521, c. 418, § 15, requiring orders drawn by a building contractor or subcontractor on the owner of property for moneys payable on the contract to be filed, applies only to orders drawn by a contractor or subcontractor, and in no wise affects payments made by the owner on account of labor or material, and hence the failure of subcontractors to file orders given them by the owner for the cancellation of their lien was not evidence of a purpose to deceive subsequent lienors.

5. SAME—NOTICES OF LIEN—FILING—STATUTES— REPEAL BY IMPLICATION.

Laws 1895, p. 1405, c. 635, tit. 12, § 3, entitled "An act to revise the charter of the city of Yonkers," provides that all notices to effect a lien on property within the city under the mechanic's lien law, applicable to the county of Westchester, shall also be filed in the office of the city clerk, and no such lien shall be in force unless so filed. The first general lien law (Laws 1885, p. 592, c. 342, § 25) declares the act to be liberally construed, and provides that a substantial compliance therewith shall be sufficient. Section 4 (page 586) thereof when passed, was sustantially the same as Lien Law, Laws 1897, p. 519, c. 418, § 10, providing that a notice of lien must be filed in the clerk's office of the county where the property is situated. *Held* that, as the revised charter of Yonkers was enacted after the enactment of said general lien law of 1885, there was no repeal of the provisions of the charter by the revision of the lien law made in 1897, and the provision in the charter was to be construed, not as a substitute for the procedure prescribed by the general lien law, but in furtherance of it, requiring an additional filing.

6. STATUTES—VALIDITY—TITLE—EXPRESSING SUBJECT—CONSTITUTIONAL LAW.

Laws 1895, p. 1405, c. 635, entitled "An act to revise the charter of the city of Yonkers, and providing in title 12, § 3, of such chapter, that all notices to effect a lien on property within the city under and by virtue of the mechanic's lien law, etc., shall be filed in the office of the city clerk, in addition to filing in the office of the county clerk, as required by the lien law, is violative of Const. art. 3, § 16, providing that no private or local bill passed by the Legislature shall embrace more than one subject, which shall be expressed in the title; such provision for the filing of mechanics' liens not being germane to the subject of an act creating a municipal corporation.

Appeal from Special Term, Westchester County.

Action by Louis P. Tommasi against Paul S. Bolger and others. From the judgment, defendants Paul S. Bolger, National Surety Company, and Joseph E. Butterworth appeal. Reversed.

Argued before JENKS, HOOKER, RICH, MILLER, and GAYNOR, JJ.

John J. Townsend (James B. Ludlow, on the brief), for appellants Bolger and National Surety Co.

Douglas Mathewson, for appellant Butterworth.

Arthur J. Burns, for respondent Tommasi.

Elliott M. Irvine, for respondents Forsyth and Suydam.

JENKS, J.    This is the foreclosure of mechanics' liens. The judgment against the defendant rests upon the finding that he (the owner) made payments to the contractor prior to the time when, by the terms of the contract, such payments became due, for the purpose of avoiding the provisions of the lien law (section 7, c. 418, p. 517, Laws 1897), and therefore these payments were not effective against the lien of the plaintiff and the defendant subcontractors. The contract called for five payments to be made on two houses at successive stages of the work thereon. The section supra, invoked by the plaintiff, in the part germane to this case, reads as follows:

"Any payment by the owner to a contractor upon a contract for the improvement of real property, made prior to the time when, by the terms of the. contract, such payment becomes due, for the purpose of avoiding the provisions of this article, shall be of no effect as against the lien of a sub-contractor, laborer or material man under such contract, created before such payment actually becomes due."

The expression in chapter 478, p. 947, of the Laws of 1862, construed in Post v. Campbell, 83 N. Y. 279, reads: Payments made "by collusion for the purpose of avoiding the provisions of this act, or in advance of the terms of any contract." The court in that case held that payments in advance of the terms of any contract, aside from any questions of collusion or of avoidance of the provisions of the act, were prescribed. The provision in chapter 342, p. 585, of the Laws of 1885, as amended by chapter 673, p. 453, of the Laws of 1895, disallows against lienors payments made "for the purpose of avoiding the provisions of this act or in advance of the terms of any contract by collusion.' In Miller v. Smith, 20 App. Div., at page 510, 47 N. Y. Supp., at page 51, Herrick, J., for the court, points out that the expression in H. B. C. Co. v. N. Y. C. & H. R. R. R. Co., 145 N. Y. 390, 40 N. E. 86, as follows:

"Under Lien Act 1885, p. 585, c. 342, it has been held in this court that where the owner has made payments to his contractor, although without fraud or collusion, before they are due under the terms of the. contract, such payments cannot be allowed to the owner. Post v. Campbell, 83 N. Y. 279, 283"

—must be inadvertent, inasmuch as Post v. Campbell, supra, did not arise upon the said law of 1885, but the said law of 1862. Inasmuch as the statement in H. B. C. Co. v. N. Y. C. & H. R. R. R. Co., supra, was based entirely on authority of Post v. Campbell, supra, and was

not necessary to the judgment, I think that the view taken by the court in Miller v. Smith, supra, is correct.

As I read the present statute, it does not prohibit payments made before they became due, but only such payments when made for the purpose of avoiding the provisions of the act. It is not enough that such payments may impair the effect of the statute, and thus pro tanto avoid it, but they must also have been made with the purpose to avoid it. The evidence is sufficient to establish the premature payment to, the contractors on account of the fourth installment.

The conclusion of the purpose of such payments depends upon findings which are essentially as follows: At or before the time when the plaintiff filed his lien, the defendant told and represented to the plaintiff that, "if he should file such lien," he would be sure to get his money, as there was plenty of money to complete the work and materials to be done under the contract between him and Archibald Bros. Within a day or two before Foster and Suydam filed their notice of lien the defendant represented to them that if they would proceed with the work and protect themselves, by which they understood to file such lien, there would be sufficient money left on his contract with Archibald Bros. to complete the work and pay them for their work and materials. Before they completed this work the defendant told them there was a payment of $1,400 on each house still to be made. When the defendant made these statements, he knew that he had exercised his option to do the plumbing work and heating, whereby $1,200 was to be deducted, and he concealed that fact. He made the aforesaid statements about six weeks after he had made the payments on account of said fourth payment, and after he had accepted two orders of Lawrence Bros. for $644.99 in cancellation of their lien, and he concealed that fact.

The contract price of the house was $9,976. The fourth payment was $2,000, and the fifth and final payment $2,976. The lien filed by the plaintiff was $340, that of Foster & Suydam $201, and that of the defendant Butterworth $550. The record is somewhat involved, and I may be misled; but it seems to me that the sum total of the liens was not so large that the defendant may not have honestly believed that there would be forthcoming, in spite of his advances and payments in depletion of the fourth payment, out of the payments yet to be made a sum sufficient to pay for the labor done and the materials furnished, as indicated by the liens filed. The finding of "concealments" is based upon the fact that the defendant did not communicate such circumstance to these subcontractors. But these payments were made months prior to the times that the liens under consideration were filed, there is evidence that they were made in order that the work might go forward, and there was at least no legal reason why he should have stated the transactions to these subsequent lienors. Harvey v. Brewer, 178 N. Y. 5, 70 N. E. 73. If the defendant made these payments with the purpose to avoid the statute, it seems strange that thereafter he should, at his own instance, as the lienors all testify, have urged them to protect themselves by filing liens. Advance payments are not prohibited, and it may well be that the purpose of them in this case was to

100 N.Y.S.—24

accommodate the contractors and to incite them to more diligence in their work, which had lagged and was behindhand. I think that the lienors did not establish their right to the finding that these payments were made for the purpose of avoiding the statute.

The court also found as follows:

"The said Bolger gave such orders to Lawrence for the cancellation of the lien of said Lawrence Bros., and the cancellation thereof and the substitution therefor of such orders were calculated to deceive the plaintiff and the defendants Forsyth & Suydam and Butterworth; the said orders not being filed as specified in section 15 of the lien law (Laws 1897, p. 521, c. 418), at that time, or until March 26, 1902, after said notices of lien were filed by the plaintiff and by Forsyth & Suydam as aforesaid."

I think that this is based upon an erroneous proposition. See Harvey v. Brewer, supra.

The appellant Butterworth did not file his lien in accord with a provision of section 3, tit. 12, c. 635, p. 1405, of the Laws of 1895, entitled "An act to revise the charter of the city of Yonkers," which is:

"All notices to effect a lien upon property within the city under and by virtue of the mechanic's lien law, now applicable or which hereafter may become applicable to the county of Westchester shall also be filed in the office of the city clerk, and no such lien shall be in force unless so filed."

It is contended that, inasmuch as he did file it pursuant to the provisions of the lien law (chapter 418, p. 514, of the Laws of 1897), he thereby established his lien, and the court erred in rejecting it. The contention is based upon the proposition that the lien law of 1897 repealed the provisions in the revision act of the Yonkers charter. If so, it was by implication. This provision in that city charter is not a substitute for the procedure prescribed by the general lien law, but is in furtherance of it; i. e., it requires an additional filing. Furthermore, such provision is identical with that in the charter of 1881, which reenacted a somewhat similar provision of the amended charter of 1875. Laws 1875, p. 696, c. 578, § 2. The provision there read:

"All papers required to be filed in the county clerk's office affecting property within said city, under and by virtue of the mechanic's lien law now applicable or which may hereafter become applicable to the county of Westchester, shall be filed in the office of the city clerk of said city."

This was altered in the charter of 1881 (Laws 1881, p. 269, c. 184, tit. 11, § 3) to its present form. The first general lien law, chapter 342, p. 592 of 1885, provided at section 25 as follows:

"This act is hereby declared to be a remedial statute and is to be construed liberally to secure the beneficial interests and purposes thereof; and a substantial compliance with its several provisions shall be sufficient for the validity of the lien, or liens hereinbefore provided for, and to give jurisdiction to the courts to enforce the same."

When that was passed, section 4 (page 586) was substantially the same as section 10 in the revision. Lien Law 1897, p. 519, c. 418. But the revised charter of Yonkers, with this enactment, was enacted after the enactment of the general lien law of 1885, namely, in 1895. Therefore the local law was enacted after the general law, so the principle that a general law on this subject repealed by implication the local

law cannot apply so far as the general act of 1885 is concerned, and is an argument against the theory of a repeal by implication worked by the revision of the general lien law made in 1897.

In People ex rel. Leet v. Keller, 157 N. Y., at page 97, 51 N. E., at page 432, Gray J., quotes with approval the expression of the court in People v. Quigg, 59 N. Y. 83:

"Laws, special and local in their application, are not deemed repealed by general legislation, except upon the clearest manifestation of an intent by the Legislature to effect such repeal, and ordinarily an express repeal by some intelligible reference to the special act is necessary to accomplish that end."

The local and the general acts are not antagonistic, but both may exist without clashing. There is no policy of nullification of statutes that I can invoke, and I cannot find sufficient indication of the legislative intent to repeal this provision of the Yonkers charter by implication.

But I am of opinion that the contention that this provision is in violation of section 16, art. 3, of the Constitution, should prevail. The section reads:

"No private or local bill, which may be passed by the Legislature, shall embrace more than one subject, and that shall be expressed in the title."

This statute relative to Yonkers is a local act. People v. O'Brien, 38 N. Y. 193; Ferguson v. Ross, 126 N. Y. 459–464, 27 N. E. 954. The question arises upon the title of the original act. Matter of New York and Long Island Bridge Co. v. Smith, 148 N. Y. 540, 42 N. E. 1088. The act is entitled "An act to revise the charter of the city of Yonkers." Chapter 635, p. 1327, of the Laws of 1895. The act in which first appeared any provision of this character was chapter 578, p. 678, of the Laws of 1875, entitled "An act to amend an act entitled 'An act to re-enact and amend an act entitled "An act to incorporate the city of Yonkers."'" The rule is expressed by Vann, J., in People ex rel. Village of Brockport v. Sutphin, 166 N. Y., at page 172, 59 N. E., at page 773:

"We agree with the learned Appellate Division that where 'the title of a local law expresses a general purpose of object, all matters fairly and reasonably connected therewith and all measures which will or may facilitate the accomplishment of such purpose or object are properly incorporated into the act and are germane to the title.' Citing People ex rel. City of Rochester v. Briggs, 50 N. Y. 553; Neuendorff v. Duryea, 69 N. Y. 557, 25 Am. Rep. 235. See, also, Wrought Iron Bridge Co. v. Town of Attica, 119 N. Y. 204, 23 N. E. 542; Van Brunt v. Town of Flatbush, 128 N. Y. 50, 27 N. E. 973; Sweet v. City of Syracuse, 129 N. Y. 316, 27 N. E. 1081, 29 N. E. 289."

In Diana Shooting Club v. Lamoreux, 114 Wis. 44, 89 N. W. 880, 91 Am. St. Rep. 898, the court approves of this rule, as stated in 166 N. Y. 172, 59 N. E. 773, but adds:

"But in applying that rule this other rule, which has been universally adopted, must be kept in mind. The statement of a subject includes by reasonable inference all those things which may facilitate the accomplishment thereof."

In People ex rel. City of Rochester v. Briggs, 50 N. Y. 553–559, the court, per Church, C. J., say:

"A municipal corporation is a part of the governmental machinery of the state, organized not for the purpose of exercising certain functions of government, within a specified locality; and it possesses such powers, and such only, as are conferred upon it by the Legislature; and they are to be exercised in such form, mode, and manner, and by such agencies as the Legislature may from time to time prescribe, within the limits of the Constitution. The charter, as it is called, consists of the creative act and all laws in force relating to the corporation, whether in defining its powers or regulating their mode of exercise."

In Montclair v. Ramsdell, 107 U. S. 147, 2 Sup. Ct. 391, 27 L. Ed. 431, the court, per Harlan, J., say:

"The one general object—the creation of an independent municipality—being expressed in the title, the act in question properly embraced all the means or instrumentalities to be employed in accomplishing that object."

All necessary "legislative, taxing, judicial and police powers" constitute one subject. Harris v. People, 59 N. Y. 599. In Louisiana v. Pilsbury, 105 U. S. 278, 26 L. Ed. 1090, the court, per Field, J., say:

"The article of the Constitution declares that 'every law enacted by the Legislature shall embrace but one object, and that shall be expressed in the title.' A similar provision is found in several state Constitutions. Its object is to prevent the practice, common in all legislative bodies where no such provision exists, of embracing in the same bill incongruous matters, having no relation to each other or to the subject specified in the title, by which measures are often adopted without attracting attention, which, if noticed, would have been resisted and defeated. It thus serves to prevent surprise in legislation. But it was not intended to forbid the union of several different provisions in the same bill, if they are germane to the general subject indicated by its title. A bill to incorporate a city and provide for its government may, without conflicting with the constitutional clause, contain provisions relating to the various subjects upon which municipal legislation may be required for the preservation of peace, good order, and health within its limits, the promotion of its growth and prosperity, and the raising of revenue for its government. So here, under the title of the act in question, provisions might be enacted, not merely relating to the union of the different municipalities and the government of the city, but to all the varied details into which the general administration of its affairs might lead."

A mechanic's lien is a statutory lien upon buildings and other improvements on realty and the realty, favoring certain classes of workmen, to secure them priority or preference of payment of compensation for this work or material. A municipality has no concern either in the creation of such remedy or of its enforcement, and has no duties relative thereto. I fail to see how an isolated provision for the filing of mechanics' liens or for the additional filing thereof is in any way germane to the subject of an act creating a municipal corporation. Prior to the passage of chapter 316, p. 405, of the Laws of 1878, there was even no law by which any lien could attach upon public buildings or moneys due from a city to a contractor. Bell v. Mayor, 105 N. Y. 139, 11 N. E. 495. The object of this constitutional provision, it is said in Harris v. People, supra, was twofold:

"To prevent the joining of one local subject to another or others of the same kind, or to one or more general subjects, so that each should gather votes for all; and to advise the public, and the locality, and the representatives of the locality, and of other parts, of the general purpose of the bill, so that those interested might be on their guard as to the whole or as to the details. People ex rel. v. Sup'rs of Chautauqua, 43 N. Y. 10."

No one, upon reading the title, would for a moment be apprised, or would even conjecture, that such an act contained a provision like that now under consideration. See Cahill v. Hogan, 180 N. Y. 304, 309, 73 N. E. 39. I am of opinion that the provision is unconstitutional, and that the appellant Butterworth's lien was not affected by his omission to conform thereto.

The judgment is reversed, and a new trial is granted; costs to abide the final award of costs. All concur.

---

(50 Misc. Rep. 99.)

### In re JOHNSON'S ESTATE.

(Surrogate's Court, Kings County. March, 1906.)

1. WILLS—ELECTION BY WIDOW—EFFECT ON DOWER RIGHTS.

Testator charged a life insurance policy payable to his estate with the payments of his debts, gave his household furniture to his wife, and the residue of his estate he conveyed in trust, the income to be paid to his wife for life or so long as she remained his widow, and upon her death or remarriage the fund to be paid to his daughter absolutely. *Held*, that the widow, having elected to take under the will, could not enforce her dower right in the remaining property of testator.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, § 2074.]

2. SAME—WHAT CONSTITUTES ELECTION.

Where testator devised certain property to his wife and placed the residue in trust, the income to be paid to his wife during her life or until she remarried, and the widow prior to remarriage took the income from the entire estate under the will, without any suggestion in her account as executrix that she was only claiming dower, it constitutes an election to take under the will.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, § 2056.]

3. SAME—DEVISE IN TRUST.

Where property is left in trust, the income to be paid to the widow for life, and in the event of her remarriage the entire fund to the daughter, on remarriage of the widow the trustees should turn over the entire estate to the guardian of the infant daughter of testator.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, § 1638.]

4. EXECUTORS—MANAGEMENT OF ESTATE—EXPENDITURES.

Where testator left a horse, which his widow, one of the executors, instead of selling, retained for her personal use, she is personally chargeable with the expense of his keep.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, § 435.]

5. TRUSTS—EXECUTION OF TRUST—APPLICATION OF PRINCIPAL.

Where an entire estate was put in trust, the income to be paid to the widow until remarriage, the trustees could not, on such remarriage, diminish the corpus of the estate by deducting therefrom money paid by the widow for the support of her daughter during the existence of the trust.