DELAWARE COUNTY ELECTRIC COOPERATIVE, INC., et al., Respondents, v POWER AUTHORITY OF THE STATE OF NEW YORK et al., Appellants.

Fourth Department, November 4, 1983

APPEARANCES OF COUNSEL

*Stephen L. Baum* (*Gerald C. Goldstein, Wendy M. Lane* and *Reina Barcan* of counsel), for Power Authority of the State of New York, appellant.

*Huber, Lawrence & Abell* (*Frederic H. Lawrence* and *Kenneth M. Jasinski* of counsel), for New York State Electric & Gas Corp., appellant.

*Hodgson, Russ, Andrews, Woods & Goodyear* (*Victor T. Fuzak, Richard F. Campbell* and *Howard E. Berger* of counsel), for respondents.

OPINION OF THE COURT

MOULE, J.

The principal question on this appeal concerns the interpretation of sections 1005 and 1009 of the Public Authorities Law.

Each of the four plaintiffs is a not-for-profit rural electric cooperative incorporated pursuant to the Rural Electric Cooperative Law for the purpose of supplying low-cost electric service to sparsely populated regions of the State which are not served by a private utility company. Defendant Power Authority of the State of New York (Power Authority) is a public authority created by section 1002 of the Public Authorities Law for the purpose of developing the State's natural and man-made energy resources and insuring that all regions of the State are afforded sufficient and dependable power capacity (Public Authorities Law, § 1001). Defendant New York State Electric & Gas Corporation (NYSEGC) is a privately owned utility company in the business of generating, transmitting, distributing and selling electrical power.

In 1959 and 1961 the Power Authority entered into contracts with the various plaintiffs for the sale of hydroelectric power generated by the Power Authority's Niagara and St. Lawrence power plants. Since the Power Authority lacked the transmission facilities to deliver this power to the plaintiffs, it contracted with NYSEGC to deliver the

power. Pursuant to the contracts between the plaintiffs and the Power Authority, the plaintiffs were obligated to reimburse the Power Authority for these transmission costs.

The transmission agreements between the defendants provided that Power Authority generated electricity would only be transmitted over NYSEGC transmission facilities at those times when the facilities were operating at less than full capacity. In February, 1981 the municipal and rural electric cooperative customers of the Power Authority filed a complaint with the Federal Energy Regulatory Commission (FERC) alleging that the Power Authority's agreements with the utility companies to provide transmission services only during periods of excess capacity failed to meet the Power Authority's statutory obligation to provide sufficient power to its preference customers. The complaint seeks to compel the Power Authority to provide the "firm transmission" of power to its customers.[1]

Following negotiations between NYSEGC and the Power Authority, the letter agreement, which is the subject of this litigation, was approved and executed on February 23, 1982. The letter agreement provides that in consideration for substantial rate increases,[2] NYSEGC shall render "firm" transmission of Power Authority energy to Power Authority customers. Pursuant to the agreement, the Power Authority also agreed not to protest NYSEGC's filing with FERC for approval of the rate increase.

On March 30, NYSEGC filed the letter agreement with FERC pursuant to section 824e (subd [a]) of title 16 of the United States Code. FERC has exclusive jurisdiction to determine whether rates charged by public utilities for transmission services are "just and reasonable". On April 22, 1982 the plaintiffs, through their representative, the New York State Rural Electric Cooperative Association (NYSRECA), filed a protest with FERC concerning the letter agreement. Among other things, the protest alleged that the letter agreement was invalid for noncompliance

---

1. The briefs recite that the February, 1981 proceeding concerning the sufficiency of the electrical transmission service was still pending before FERC.

2. Previously NYSEGC charged the Power Authority 75 cents per month per kilowatt of billing demand. The letter agreement called for an increase of $2.10 per month per kilowatt of billing demand.

with the hearing and approval requirements of section 1009 of the Public Authorities Law. NYSEGC and the Power Authority filed answers in opposition to the protest.

On June 4, 1982 FERC issued an order which established hearing procedures and directed that the new transmission rates go into effect July 2, 1982, subject to refunds. The order also stated with respect to the Public Authorities Law that "[i]nsofar as NYSRECA raises issues of state law * * * its appropriate avenue of relief is in a court of competent jurisdiction".

On June 23, 1982 the plaintiffs, through NYSRECA, filed an application for rehearing of FERC's June 4 order pursuant to section 825*l* (subd [a]) of title 16 of the United States Code. In part, the application contends that the letter agreement was subject to compliance with section 1009 of the Public Authorities Law and that FERC improperly declined to adjudicate this issue since it has the affirmative duty to determine the validity of the agreement under State law. The application for rehearing was denied as a result of FERC's failure to act thereon (US Code, tit 16, § 825*l*, subd [a]). The plaintiffs did not appeal to the United States Court of Appeals.

On July 21, 1982 plaintiffs commenced this action to void the letter agreement entered into by the defendants. The Power Authority and NYSEGC thereafter moved to dismiss the complaint, and plaintiffs cross-moved for partial summary judgment to declare the letter agreement void.

On February 24, 1983 Special Term decided that dismissal was not warranted due to lack of subject matter jurisdiction, nonjoinder of necessary parties, *res judicata,* or the running of the Statute of Limitations (118 Misc 2d 77). The court further held that the letter agreement was invalid for noncompliance with the public hearing and gubernatorial approval requirements of section 1009 of the Public Authorities Law.

Defendants, the Power Authority and NYSEGC, appeal from Special Term's order denying their motion to dismiss plaintiffs' complaint and granting plaintiffs' cross motion for summary judgment.

Four issues[3] are raised on appeal: (1) that the Supreme Court lacked subject matter jurisdiction over the action; (2) that the letter agreement between the defendants is not subject to the hearing and gubernatorial approval requirements of section 1009 of the Public Authorities Law; (3) that the action is barred by *res judicata* or collateral estoppel; and (4) that the action is untimely under CPLR 217.

The first issue to be addressed is whether Special Term possessed subject matter jurisdiction to adjudicate whether the letter agreement was subject to the requirements of section 1009 of the Public Authorities Law. Three arguments are advanced by defendants asserting that Special Term did not have subject matter jurisdiction: (a) that FERC and the Federal courts have exclusive jurisdiction over matters concerning the validity of a rate contract; (b) that the court's order invalidating the letter agreement violated the "filed rate doctrine"; and (c) that the plaintiffs' proper remedy is an appeal to the Federal Court of Appeals.

■ Special Term held that FERC and the New York courts had concurrent jurisdiction to adjudicate the question whether the letter agreement was subject to the hearing requirements of section 1009 of the Public Authorities Law. Special Term properly noted that FERC has exclusive jurisdiction over rate determinations. It found the nub of this issue to be whether State courts have jurisdiction over State contract or statutory compliance issues which either were raised or could have been raised before FERC.

Defendants rely on *City of Cleveland v Federal Power Comm.* (525 F2d 845) to support their position that FERC's exclusive jurisdiction pre-empts State court consideration of the questions presented. In *City of Cleveland* the municipality entered into a letter agreement with a public utility. The letter agreement was then accepted for filing by the Federal Power Commission (FERC's predecessor) as a rate schedule. When the city thereafter complained to the commission that the utility unilaterally changed the agreement by inserting terms not agreed upon, the commission

---

**3.** Defendants do not brief and, thus, waive any claim that dismissal is warranted for nonjoinder of necessary parties (*Lamphear v State of New York*, 91 AD2d 791).

rejected the city's complaint holding that any such violation was a "local matter between the City and its officials" (*City of Cleveland v Federal Power Comm., supra,* p 852). The United States Court of Appeals disagreed and held that the commission should have exerted its authority to resolve the difficulty presented by the city's contention. The court characterized the claim that the letter agreement was violated as a "Matter warranting investigation". While *City of Cleveland* makes clear that FERC has jurisdiction to resolve State law questions and the obligation to insure such questions are resolved prior to approval of a final rate schedule, it does not hold that FERC is the only arbiter of State law which is relevant and incident to the rate filings.

The June 4, 1982 FERC order in this case refers the question of compliance with section 1009 of the New York Public Authorities Law to a "court of competent jurisdiction". Since our courts have a legitimate interest and, indeed, an obligation to interpret New York law, Special Term's exercise of jurisdiction was proper. Our interpretation of New York law should not be viewed as impinging on FERC's exclusive rate-making jurisdiction since the impact of our decision, if any, on the final rate schedule ultimately depends on the results of the FERC-ordered hearing. As previously recognized by this court, though the Federal Power Act (US Code, tit 16, § 824 *et seq.*) grants exclusive jurisdiction to FERC concerning actions under that statute, it does not divest the New York courts of concurrent subject matter jurisdiction where the complaint asserts rights and seeks relief based upon State law (*Airco Alloys Div. v Niagara Mohawk Power Corp.,* 65 AD2d 378).

Defendants next argue that the "filed rate doctrine" of *Arkansas Louisiana Gas Co. v Hall* (453 US 571) prohibits the New York courts from exercising jurisdiction since the hearing and gubernatorial approved requirements of section 1009 of the Public Authorities Law could lead to the institution of rates other than those approved by FERC. The filed rate doctrine prohibits a regulated utility from charging rates for its services other than those properly filed with FERC. The doctrine's underlying concerns are the "preservation of the agency's primary jurisdiction over

reasonableness of rates and the need to insure that regulated companies charge only those rates of which the agency has been made cognizant" (*City of Cleveland v Federal Power Comm.*, 525 F2d 845, 854, *supra*). Special Term did not violate the filed rate doctrine by passing upon the question whether the Power Authority had an obligation to hold hearings prior to executing a transmission agreement to be filed with FERC. This question does not directly affect the reasonableness of the rates. Furthermore, because the FERC order only conditionally approved the proposed rate schedule, subjecting it to refunds and evidentiary hearings and also apparently the resolution of the action, Special Term did not contravene Congressional intent by altering the effective price schedule without necessary Federal approval. This distinguishes the instant case from *Arkansas Louisiana Gas Co. v Hall* (453 US 571, *supra*) where the State court's award of contractual damages would have effectuated a retroactive increase in the rate charged by producers of natural gas.

Defendants' final argument, that plaintiffs' proper remedy is an appeal to the United States Court of Appeals under subdivision (b) of section 313 of the Federal Power Act (US Code, tit 16, § 825*l*, subd [b]), is also without merit. FERC avoided deciding plaintiffs' State law claim by directing the parties to refer the question of statutory compliance to a court of "competent jurisdiction". Thus, the instant case is distinguishable from those relied on by defendants which proscribe State courts from attempting to collaterally alter or overrule a properly made Federal agency or court order (see *City of Cleveland v Federal Power Comm., supra; City of Tacoma v Taxpayers*, 357 US 320). The facts of the instant case show that the defendants are in State court at the directive of, rather than in denigration of, the order of the FERC.

Accordingly, Special Term possessed subject matter jurisdiction to determine whether the letter agreement between the defendants was subject to the hearing requirements of section 1009 of the Public Authorities Law.

The second issue presented, the question at the heart of this controversy, is whether the Power Authority agree-

ment with NYSEGC is subject to section 1009 of the Public Authorities Law. Section 1009 provides:

"Contracts negotiated by the authority as provided in *sub-paragraph five or six of section one thousand five* of [the Public Authorities Law] shall be entered into and executed as follows:

"1. After * * * a public hearing or hearings upon the terms thereof * * *

"4. If the governor shall approve such contract, then the same shall be executed by the chairman and secretary of the authority and it shall thereupon come into full force and effect." (Emphasis supplied.)

The question presented does not concern an interpretation of section 1009 itself but whether the letter agreement for transmission of electricity only entered into by defendants is a contract falling within subdivision 5 of section 1005 of the Public Authorities Law. This is a question of first impression.

Defendants contend that Special Term erred in requiring a hearing under section 1009 because the letter agreement is authorized not by subdivision 5 but by paragraph c of subdivision 8 and subdivision 7 of section 1005. Paragraph c of subdivision 8 provides that the Power Authority is authorized:

"To cooperate with and, when the trustees deem it feasible and advisable, to enter into contractual arrangements with utility companies * * *

"c. With respect to construction, acquisition, ownership, operation and/or *use of transmission facilities.*" (Emphasis supplied.)

Subdivision 7 provides the Power Authority is empowered: "To proceed with the physical construction or completion of any project authorized by this title * * * and including also the erection of such transmission lines as may be necessary to conduct electricity to users located at or near the site; and *including also the acquisition, by contract only with the owners thereof, of transmission lines or the use of such transmission lines,* available or which may be made available." (Emphasis supplied.)

Defendants conclude these subdivisions form independent alternative statutory bases for contracts involving solely transmission service and, therefore, the letter agreement is not subject to the public hearing and gubernatorial approval requirements of section 1009. Resolution of the question of which subdivision applies requires the court to examine the legislative intent behind the subdivisions in issue.

Subdivision 5 of section 1005 is relied on by the plaintiffs. It provides, in relevant part, that the Power Authority is empowered:

"To develop, maintain, manage and operate those parts of the Niagara and Saint Lawrence hydroelectric projects owned or controlled by it in such manner as to give effect to the policy hereby declared (and all plans and acts, and all contracts for the *use, sale, transmission and distribution* of the power generated by such projects, shall be made in the light of, consistent with and subject to this policy) * * * In furtherance of this policy * * * the authority * * * may secure a reasonable share of the power generated by such projects, and shall sell the same or cause the same to be sold to such municipalities and political subdivisions at prices representing cost of generation, plus capital and operating charges, plus a fair cost of transmission, all as determined by the trustees * * *

"Contracts for the *sale, transmission and distribution* of power generated by such projects shall provide for the effectuation of the foregoing policy". (Emphasis supplied.)

Special Term held (118 Misc 2d 77, 87, *supra*) that the only proper conclusion that can be drawn is that these subdivisions form a "joint statutory basis" for transmission contracts and, therefore, the transmission-only letter agreement was a contract made pursuant to subdivision 5 and thus was subject to the hearing and approval requirements of section 1009. The court noted that, although subdivision 8 was adopted after subdivision 5 (L 1968, ch 294), its legislative history revealed no express or implied repeal of or intent to supplant subdivision 5. The court further reasoned that the requirements of subdivision 5, read together with section 1009, provide major procedural protection to insure public oversight and input in Power

Authority contracts which could have significant bearing on the costs and delivery of the power to consumers. As such, the court concluded that these requirements were not to be lightly disregarded without express legislative direction.

■ Special Term erred in determining that subdivision 5 formed a joint statutory basis for transmission-only contracts. Reliance on section 395 of Statutes (McKinney's Cons Laws of NY, Book 1) which concerns "Cumulative or exclusive statutes" to reach the conclusion that these sections formed a joint statutory basis was improper since paragraph c of subdivision 8 and subdivision 7 grant additional rights to the Power Authority rather than a cumulative remedy for enforcing the same right.

■■ It is fundamental that a statutory scheme must be read as a whole, and all its parts construed together (McKinney's Cons Laws of NY, Book 1, Statutes, § 97). Moreover, each provision is presumed to have some useful purpose and should not be construed in such a manner as to nullify any other (*Matter of Albano v Kirby,* 36 NY2d 526, 530; McKinney's Cons Laws of NY, Book 1, Statutes, § 98). Special Term's interpretation of subdivision 5 of section 1005 of the Public Authorities Law renders paragraph c of subdivision 8 and much of subdivision 7 superfluous and a nullity. Special Term's laudable concern for public accountability and input into Power Authority contracts cannot override express legislative authorization for transmission-only contracts authorized by these subdivisions. While subdivision 5 does, by its terms, refer to contracts for "sale, transmission and distribution of the power", the only logical reading of this subdivision, given the existence of paragraph c of subdivision 8 and subdivision 7, is that it applies only when at least one element of the contract covers the sale of Power Authority generated power. This statutory construction is consistent with the context of subdivision 5's over-all requirement that revenue from such contracts must provide for payment of all operating and maintenance costs of the project, and its repeated reference to the "sale" of power. It is also a well-established principle of statutory construction that, whenever there is a general and a particular statutory provision in the same

statute, the more specific provision will prevail (McKinney's Cons Laws of NY, Book 1, Statutes, § 238). Subdivision 7 and paragraph c of subdivision 8 being more specific with respect to transmission-only contracts, should prevail over the more general reference to "transmission" contracts in subdivision 5.

Further, this construction is consistent with the plain meaning of the word "transmission" as used in subdivision 7 and paragraph c of subdivision 8 (McKinney's Cons Laws of NY, Book 1, Statutes, § 92) and permits the Power Authority to enter into new transmission agreements as its customers' needs inevitably change to expeditiously insure the delivery of its service. It should also be noted that, since FERC has an obligation to hold extensive public hearings on rate requests of private utilities and to determine the proper rates, State public hearings in the present case would merely be duplicative.

The legislative history of sections 1009 and 1005 is unfortunately unenlightening in resolving the questions raised on this appeal. The legislative material referring to section 1009 refers only to contracts for the sale of Power Authority power. Moreover, none of the material confronts the question of whether section 1009 compliance is required for contracts which do not involve a sale of power (see NY Legis Ann, 1974, p 387; NY Legis Doc, 1956, No. 46, Public Authorities under New York State, pp 563-571). Plaintiffs' contention that deference should be given to Governor Harriman's construction of the statute in 1956 is also unavailing. The Governor's memorandum itself indicates that the approval of the contract in question was made solely as a result of the uncertainty of whether or not his approval was necessary. The Governor's approach apparently was to avoid the possibility that the contract would be challenged and invalidated. More importantly, however, Governor Harriman's interpretation of the statute occurred prior to the adoption of subdivision 8 of section 1005 (L 1968, ch 294). Lastly, plaintiffs' reliance on the procedures surrounding the execution of the original contracts between NYSEGC and the Power Authority and plaintiffs and the Power Authority is also misplaced because each included the sale of power and did not involve

only transmission services. Thus, the legislative history of these sections is essentially of no precedential value.

The function of the court in interpreting a statute is to construe the language of the text so as to give effect to the legislative purpose behind the statute (*Eaton v New York City Conciliation & Appeals Bd.,* 56 NY2d 340, 345). We hold that, because the primary focus of subdivision 5 of section 1005 concerns the sale of Power Authority power and because an expressed purpose of paragraph c of subdivision 8 and subdivision 7 is to provide independent bases for the Power Authority to enter into transmission-only contracts, the hearing requirements of section 1009 of the Public Authorities Law are inapplicable. Consequently, plaintiffs' complaint fails to state a cause of action and should be dismissed (CPLR 3211, subd [a], par 7).

Having determined that plaintiffs' complaint fails to state a cause of action, it is unnecessary to reach the other issues raised.

The order of Special Term should be reversed and defendants' motion to dismiss the complaint should be granted.

HANCOCK, JR., J. P., CALLAHAN, DOERR and BOOMER, JJ., concur.

Order unanimously reversed, without costs, defendants' motion granted and complaint dismissed.