In the Matter of Fillippo Villella et al., Appellants, v Department of Transportation of the State of New York et al., Respondents.

Third Department, November 10, 1988

## APPEARANCES OF COUNSEL

*Ronald H. Sinzheimer (Peter J. Molinaro* of counsel), for appellants.

*Robert Abrams, Attorney-General (Francis J. Keehan, Peter H. Schiff* and *Douglas H. Ward* of counsel), for respondents.

## OPINION OF THE COURT

KANE, J. P.

This proceeding concerns a project proposed by respondent Department of Transportation (hereinafter DOT) in 1985 to replace, *inter alia,* all major mounted guide, regulatory and warning signs on an 8.4-mile stretch of Interstate Route 190 which connects the North Grand Island Bridge with the Lewiston-Queenston International Bridge Plaza in Niagara County. Since the issue raised before this court involves a Statute of Limitations question, a listing of the dates, along with the pertinent facts, is required.

In June 1986, DOT classified the project as a type II action under 17 NYCRR part 15. This classification obviated the requirement for further review under the State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA). The Federal Department of Transportation approved the project on July 28, 1986 and approximately one year later, on June 26, 1987, it gave DOT authorization to solicit bids on the project. On June 30, 1987, respondent Commissioner of Transportation authorized, via an internal memo to DOT's contract bureau, the advertising of bids for the project. Bids were advertised in several newspapers on July 8, 1987 and July 15, 1987. On September 14, 1987, the State Comptroller awarded a contract on the project.

Thereafter, on January 12, 1988, petitioners, all of whom are merchants who own tourist-related businesses in close proximity to Route 190, commenced this proceeding challenging DOT's implementation of the project. Essentially, they argued that the proposed change in signs would cause a diversion of traffic that would negatively affect their respective businesses. Petitioners sought, among other things, an order nullifying DOT's classification of the project as a type II action under SEQRA. In answer to the petition, DOT and the

Commissioner moved to dismiss, *inter alia*, on the ground that the proceeding was not timely commenced pursuant to CPLR 217. Supreme Court granted the motion and this appeal by petitioners ensued.

■ We affirm. As an initial matter, the parties do not dispute that the four-month Statute of Limitations contained in CPLR 217 applies to proceedings challenging an agency's failure to comply with SEQRA *(see, Citizens for Envtl. Safety v New York State Dept. of Envtl. Conservation,* 134 AD2d 935, *lv denied* 71 NY2d 803; *Vanderwoude v Post/Rockland Assocs.,* 130 AD2d 739, 741, *lv dismissed* 70 NY2d 796).* However, as this court has recently observed: "since SEQRA determinations are often preliminary steps in a project's decision-making process, the Statute of Limitations begins to run only when that decision-making process is completed, i.e., when the determination is 'final and binding' " *(Matter of Wing v Coyne,* 129 AD2d 213, 216). Deciding when a determination is final in these types of cases is not easy given that they often involve an ongoing planning and approval process where no permit or certificate or approval is required which would normally trigger the SEQRA Statute of Limitations *(supra,* at 216). In situations such as these, the commencement of the Statute of Limitations period is calculated by first ascertaining what decision is actually sought to be reviewed by a petitioner and then determining when that decision had an impact upon that petitioner so that he was actually aggrieved by it *(see, Matter of Martin v Ronan,* 44 NY2d 374, 379-381; *Matter of Wing v Coyne, supra,* at 216).

■ Here, petitioners claim that there was no final and binding decision to proceed with the project until September 14, 1987, when the Comptroller awarded a contract on the project. Therefore, they argue that it was not until that point that the Statute of Limitations began to run. If this were true, the proceeding would indeed be timely. However, we reject this argument. The crux of petitioners' challenge is to DOT's implementation of the project, particularly its designation of the project as a type II action. Although this designation was initially made by DOT in June 1986, petitioners were not actually aggrieved by it until the project's implementation

---

* [1] We note that the matter was commenced as a combined declaratory judgment action and CPLR article 78 proceeding. However, in our view, the four-month Statute of Limitations applies since the essence of petitioners' challenge is to DOT's classification of the project as a type II action under SEQRA *(see, Solnick v Whalen,* 49 NY2d 224, 230-231).

was imminent. In our view, this occurred when the Federal Department of Transportation approved the project on July 28, 1986 and later authorized DOT to let bids on June 26, 1987. The proceeding, however, was not commenced within four months of either of these dates.

Despite the considerable publicity surrounding the proposed project, it is possible that petitioners might not have been aware of the project's implementation until the letting of bids was made public. If that argument is accepted, the Statute of Limitations would not begin to run until petitioners acquired knowledge of its implementation and thereby became aggrieved (see, Matter of O'Neill v Schechter, 5 NY2d 548, 554; Matter of Palmer v New York State Dept. of Envtl. Conservation, 132 AD2d 996). This occurred on July 8, 1987 and July 15, 1987, when the bids were advertised in various newspapers. Again, the proceeding was not commenced within four months of either of those dates.

Furthermore, although petitioners argue that the date the Comptroller awarded the contract is the date the Statute of Limitations began to run, we note that they are not attacking the bidding procedure which culminated in the contract award. Rather, they are challenging the type II classification (see, Matter of Wing v Coyne, supra, at 217). As noted, this decision had an impact on petitioners when DOT obtained Federal approval and authority to proceed with the project.

The cases cited by petitioners for support are not contrary to our decision. In those cases, the suits were deemed timely because they had been brought within four months of the required approvals and acceptances of the particular agencies' proposals (see, Matter of Main Seneca Corp. v Erie County Indus. Dev. Agency, 125 AD2d 930; Delaware County Elec. Coop. v Power Auth., 118 Misc 2d 77, revd on other grounds 96 AD2d 154, affd 62 NY2d 877). Here, in contrast, the Federal Department of Transportation gave its approval and authorization of bids more than four months prior to the commencement of this proceeding. Consequently, these cases are not applicable and Supreme Court properly determined that the proceeding was untimely.

As a final matter, having determined that the suit was not timely commenced, it is unnecessary to reach the remaining issues raised by the parties.

MIKOLL, LEVINE, HARVEY and MERCURE, JJ., concur.

Judgment affirmed, without costs.