■ In the Matter of FRIENDS OF WOODSTOCK, INC., et al., Respondents-Appellants, v TOWN OF WOODSTOCK PLANNING BOARD et al., Respondents, and ULSTER COUNTY COMMUNICATIONS CORPORATION, Intervenor-Appellant-Respondent.—Mercure, J. Cross appeals from a judgment of the Supreme Court (Bradley, J.), entered March 4, 1988 in Ulster County, which partially granted petitioners' application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent Town of Woodstock Planning Board approving intervenor's request for a special use permit.

Ulster County Communications Corporation (hereinafter UCCC) proposed construction of a television transmission tower on Overlook Mountain in an R-A (Residence-Agriculture) zoning district of the Town of Woodstock, Ulster County. The 297-foot tower was to be stabilized by guy wires secured to three separate concrete anchors, also referred to as deadmen, each located 173 feet from the base of the tower. Under the Zoning Ordinance of the Town of Woodstock (hereinafter Zoning Ordinance) a public utility or transportation use is permitted in an R-A zone by securing a special use permit if garage or maintenance facilities are involved and otherwise without a special permit (Zoning Ordinance § III [A]). In either case, site plan approval is required prior to issuance of a building permit (Zoning Ordinance § V [M]). On December 17, 1981, UCCC made a preliminary presentation of the project to respondent Town of Woodstock Planning Board (hereinafter the Planning Board). At the meeting there was discussion of the Zoning Ordinance's height regulations and the need for

action of respondent Town of Woodstock Zoning Board of Appeals (hereinafter the Zoning Board); it concluded with the instruction that once preliminary matters were completed, the matter would be forwarded to the Planning Board for site plan review. No indication was made that a special use permit was required. On July 18, 1983, UCCC applied to the Zoning Board for a variance from the area and bulk regulations of the Zoning Ordinance to permit construction of a building in excess of 35 feet in height. On August 11, 1983 a public hearing was conducted on this application and on what appears to be UCCC's appeal from the Town Building Inspector's determination, *inter alia,* that the project was a public utility use for which a special permit was required. On September 1, 1983, the Zoning Board rendered its decision granting the requested variance and stating that the question of whether a special use permit was required "was resolved [at the public hearing] when it was determined that only a small portion of the building was to be used, and only to house the transmitter equipment". Although the Zoning Board decision is by no means clear, we take this as a determination that a special use permit was not required.

In the meantime, environmental review of the project under the State Environmental Quality Review Act (ECL art 8; hereinafter SEQRA) was taking place. The Ulster County Industrial Development Agency (hereinafter IDA), the original anticipated source of funding, was appointed lead agency for environmental review and prepared a "statement of environmental impact" dated August 23, 1983, which concluded that the project would have no significant impact on the environment. By letter dated September 12, 1983, the Ulster County Planning Board indicated that it had reviewed the document and had no objection to the proposed facility. UCCC made application for site plan review and the matter came before the Planning Board on June 21, 1984. At this time, there was discussion of the fact that the project would be surrounded by a six-foot-high fence and that one of the guy wire anchors would infringe upon a side-line, requiring further variances. In response to the plea of UCCC's representatives that they be allowed to proceed with the project, the Planning Board voted in favor of "approval of the project" pending variances forthcoming from the Zoning Board for the height of the fence and the location of the northerlymost deadman. On June 22, 1984, the Building Inspector issued UCCC a building permit to construct the antenna tower and to renovate the existing structure. UCCC applied for the variances required by the

height of the fence and location of the deadman and the Zoning Board referred the application to the Ulster County Planning Board pursuant to General Municipal Law § 239-m. The Ulster County Planning Board considered the matter and recommended "local determination" of the variance applications. On August 9, 1984, the Zoning Board granted the variances.

The project again came before the Planning Board on May 5, 1985, apparently due to the fact that the existing structure on the site could not be used to house the transmitting equipment, requiring construction of a new building, and the location of the base of the tower was to be moved 45 feet. For the very first time, the Planning Board indicated that a special use permit was required, a position contested by UCCC. However, with construction due to begin in 10 days and it appearing that a public hearing would not be required, UCCC did agree to file a permit application. On May 14, 1985, the Planning Board granted "preliminary approval" for the project and on May 24, 1985, the Building Inspector issued a permit to construct the accessory building and the fence, pursuant to the August 9, 1984 variances. The tower was constructed in August and September 1985. Subsequently, on November 7, 1985, the Planning Board issued what it denominated a "Special Use Permit and Site Plan Approval", imposing certain limitations and conditions upon the use of the tower. On December 4, 1985, the Building Inspector issued a certificate of occupancy.

Petitioners commenced this CPLR article 78 proceeding on December 13, 1985 to annul the Building Inspector's issuance of the June 1984 and May 1985 building permits, the Zoning Board's September 1983 variance approval, the IDA's August 1983 negative declaration of environmental impact and the Planning Board's actions of November 1985. UCCC moved for and was granted leave to intervene. Supreme Court granted the petition only to the extent of determining that the Planning Board was not authorized to issue the special use permit and site plan approval without first referring the matter to the Ulster County Planning Board in accordance with General Municipal Law § 239-m. Petitioners and UCCC cross-appeal.

Initially, we agree with Supreme Court that the individual petitioners have standing to maintain this proceeding. The individual petitioners allege that they live in close proximity to the tower and "are adversely affected by this project". The requisite showing of standing has been made (see, Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, 69 NY2d

406, 414; *Glen Head—Glenwood Landing Civic Council v Town of Oyster Bay,* 88 AD2d 484, 490; 2 Anderson, New York Zoning Law & Practice § 26.07, at 373 [3d ed]). We further uphold Supreme Court's determination that the civic association, petitioner Friends of Woodstock, Inc., lacks standing. Applying the four-pronged test set forth in *Matter of Douglaston Civic Assn. v Galvin* (36 NY2d 1, 7), we agree that there was insufficient information provided to determine whether the association was fairly representative of the Town of Woodstock community.*

Turning to the merits, we reverse that part of Supreme Court's judgment which remitted the matter to the Planning Board and otherwise affirm. We agree with Supreme Court that petitioners are barred from challenging the June 1984 and May 1985 building permits issued by the Building Inspector. The Zoning Ordinance provides for appeal to the Zoning Board by a party aggrieved by the issuance of a building permit within 30 days of the action (Zoning Ordinance § V [M] [5]; § VIII [C] [1] [a]) and judicial review by means of CPLR article 78 proceeding within 30 days of the filing of a decision in the office of the Town Clerk (Zoning Ordinance § VIII [F]). Petitioners sought no administrative appeal, thereby failing to exhaust administrative remedies, and commenced the instant proceeding long after the 30-day limitations period had expired with respect to each of the building permits. The claim that petitioners had no actual notice of the issuance of the permits is disingenuous in view of the completion of construction of the facility more than 30 days prior to commencement of the proceeding. Similarly, we agree that petitioners' challenge to the Zoning Board's September 1, 1983 grant of an area variance was barred by the 30-day limitations period of Town Law § 267 (7).

We further uphold Supreme Court's finding that petitioners' challenge to the IDA's August 23, 1983 negative declaration of environmental impact is time barred. We cannot subscribe to petitioners' reasoning that the SEQRA determination was integrated into the Planning Board's special use permit of November 1985 *(see, Matter of Town of Yorktown v New York State Dept. of Mental Hygiene,* 92 AD2d 897, 898, *affd* 59 NY2d 999). In our view, the decision-making process encompassing the negative declaration was completed at the time of

---

* We do reject, however, Supreme Court's suggestion that membership lists are required to establish a civic association's representative capacity *(see, N.A.A.C.P. v Alabama,* 357 US 449, 459-460). There are alternate ways to make the requisite showing.

the Zoning Board's August 9, 1984 decision to approve the remaining variance applications. By then, all necessary variances had been obtained, the Planning Board's site plan approval was complete and unconditional, and all necessary building permits had been issued.

However, we disagree with Supreme Court's conclusion that the matter should be remitted to the Planning Board for further proceedings. In our view, the petition should have been dismissed in its entirety. Our review of the record compels a finding that the Planning Board acted in excess of its jurisdiction in requiring UCCC to apply for a special use permit and in imposing the conditions set forth in the permit which it did issue. The Zoning Ordinance authorizes a public utility use in an R-A zone without a special use permit if no garage or maintenance facilities are involved. The Zoning Board determined that the project was to be treated as a public utility use under the Zoning Ordinance and it made a specific finding in its September 1, 1983 decision that no garage or maintenance facilities were involved. The Zoning Board, the agency responsible for administering and enforcing the Zoning Ordinance, is empowered to interpret the ordinance, and its interpretation will not be disturbed absent a showing that it is unreasonable or irrational *(see, Appelbaum v Deutsch,* 66 NY2d 975). Here, the interpretation was neither unreasonable nor irrational and, moreover, no timely challenge was made to it. Consistent with the Zoning Board's findings, the Planning Board required only site plan review and granted final approval of the project and authorized the issuance of building permits in 1984 and 1985. There having been no authority for the requirement of a special use permit and site plan review having been completed previously, we deem the November 1985 special use permit a nullity.

In any event, we cannot accept Supreme Court's conclusion that the Planning Board was required to refer the application for site plan approval or a special use permit to the Ulster County Planning Board because one of the guy wire anchors was located within 500 feet of a State wilderness area *(see,* General Municipal Law § 239-m [1]). First, General Municipal Law § 239-m, providing for additional municipal review and, potentially, interference with land use and, therefore, possessing the characteristics of a zoning ordinance *(see, Bolton v Adirondack Park Agency,* 128 Misc 2d 59, 69), is to be given a strict construction and cannot be extended by implication *(see, Matter of 440 E. 102nd St. Corp. v Murdock,* 285 NY 298, 304). Since General Municipal Law § 239-m does not define "state

park or other recreation area" and the uncertainty of whether it encompasses State-owned land within a forest preserve cannot be determined absent resort to some measure of speculation, the resulting ambiguity must be resolved in favor of the property owner (see, Matter of Allen v Adami, 39 NY2d 275, 277; Town of Huntington v Barracuda Transp. Co., 80 AD2d 555). Thus, we find that the location of the land within a State forest preserve did not trigger application of General Municipal Law § 239-m. Second, the matter was referred to the Ulster County Planning Board during the pendency of the Town Planning Board's site plan review, in connection with the Zoning Board's concurrent consideration of UCCC's application for a variance from the Zoning Ordinance's setback restrictions. The Ulster County Planning Board considered and approved the project, including, specifically, the location of the northerlymost deadman. There was no subsequent modification of the project of such a magnitude as would negate or impair this approval or warrant a further referral.

We have considered the parties' remaining contentions and find them to be either meritless or academic.

Judgment modified, on the law, with costs to intervenor, by reversing so much thereof as remitted the matter to respondent Town of Woodstock Planning Board for compliance with General Municipal Law § 239-m; petition dismissed; and, as so modified, affirmed. Kane, J. P., Casey, Mikoll, Yesawich, Jr., and Mercure, JJ., concur.