INEZ CHASE et al., Respondents, v BOARD OF EDUCATION OF THE ROXBURY CENTRAL SCHOOL DISTRICT et al., Appellants.

Third Department, February 11, 1993

### APPEARANCES OF COUNSEL

*Hogan & Sarzynski,* Binghamton *(John P. Lynch* of counsel), for Board of Education of the Roxbury Central School District, appellant.

*Robert Abrams, Attorney-General,* Albany *(Kathleen Liston Morrison, Peter H. Schiff* and *Douglas H. Ward* of counsel), for Commissioner of Education of the State of New York, appellant.

*Jordan & Walster,* Roxbury *(Herbert Jordan* of counsel), for respondents.

OPINION OF THE COURT

CREW III, J.

On August 17, 1987, defendants Board of Education of the Roxbury Central School District and Roxbury Central School District (hereinafter collectively referred to as the School District) submitted applications for additions and alterations to the Roxbury Central School building and construction of a bus garage. Based upon a review of the project applications, the Department of Education determined that the school project was a type II action under the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]) and that the bus garage project was a type I action. On May 31, 1989, the voters in the district approved a referendum authorizing both projects.

On or about February 21, 1990 the Department, after reviewing the Draft Environmental Impact Statement (hereinafter DEIS) prepared for the bus garage project, determined that the action would have "no significant effect on the environment" and issued a negative declaration. Thereafter, in November 1990, plaintiffs' attorney contacted the Department requesting, *inter alia,* that the negative declaration issued for the bus garage project be rescinded and that the school building project be reevaluated. Upon inquiry, the School District admitted that the school was located in a historic district and was contiguous to a recreation area and, further, that the bus garage site was located in a newly designated critical environmental area. In response, the Department reopened SEQRA review for the school building project, reclassified the project as a type I action and directed preparation of a DEIS. With respect to the bus garage project, the Department rescinded the negative declaration and directed preparation of a new DEIS. Thereafter, on or about June 17, 1991, the Department issued a positive declaration under SEQRA and directed that a Final Environmental Impact Statement (hereinafter FEIS) be prepared for both projects.*

Plaintiffs then commenced this declaratory judgment action on July 15, 1991 seeking, *inter alia,* a declaration that the

---

* In the interim, the Office of Parks, Recreation and Historic Preservation determined that the school building project would have no adverse impact upon cultural resources in or eligible for inclusion in the State and National Registers of Historic Places. Additionally, the Department of Environmental Conservation determined that the relevant wetlands map was in error and that no wetlands existed on the bus garage site.

School District can neither commence nor fund construction of the school building or bus garage project until such projects are approved by the voters in a referendum conducted after the FEIS has been completed and made available to voters in the district. Defendant Commissioner of Education moved to, *inter alia,* convert this action to a CPLR article 78 proceeding and dismiss the proceeding; the School District moved for summary judgment dismissing the complaint. Supreme Court concluded, *inter alia,* that plaintiffs' action was timely and denied the Commissioner's and the School District's (hereinafter collectively referred to as defendants where appropriate) respective motions; Supreme Court further ordered the Commissioner to answer the complaint. This appeal by defendants followed.

Defendants' primary contention is that this matter is time barred and, for that reason, should have been dismissed. As a preliminary matter, we note and plaintiffs concede that the four-month Statute of Limitations contained in CPLR 217 applies to this declaratory judgment action brought to challenge alleged noncompliance with SEQRA *(see generally, Bitondo v State of New York,* 182 AD2d 948, 949-950 [limitations period for declaratory judgment action determined by examining substance of claim]; *Matter of Villella v Department of Transp.,* 142 AD2d 46, 48, *lv denied* 74 NY2d 602 [SEQRA challenges subject to four-month Statute of Limitations]). Before we are able to determine what event triggered the running of the Statute of Limitations in this case, we must first ascertain what decision plaintiffs are actually seeking to have reviewed and then pinpoint when that decision became final and binding, thereby having an impact upon plaintiffs *(see, Matter of Monteiro v Town of Colonie,* 158 AD2d 246, 249; *Matter of Villella v Department of Transp., supra,* at 48).

◼ Here, plaintiffs do not challenge the validity of the May 1989 referendum per se but instead contend that it may not serve as the basis for voter approval of the subject projects because it was conducted in violation of SEQRA and the Court of Appeals' decision in *Matter of Tri-County Taxpayers Assn. v Town Bd.* (55 NY2d 41). To the extent that plaintiffs implicitly seek to set aside the results of the May 1989 referendum, it is clear that had the Department not reopened the SEQRA review process, this action would be time barred. The school building project was initially classified as a type II action and, hence, no SEQRA review was required *(see,* 6 NYCRR 617.13 [a]). It therefore follows that the referendum conducted on

May 31, 1989, insofar as it related to the school building project, was entirely proper *(cf., Devitt v Heimbach,* 58 NY2d 925, 928) and any challenge to the referendum on SEQRA grounds had to be commenced within four months of that date.

With respect to the bus garage project, the timeliness of any challenge to the referendum is governed by our prior decision in *Matter of Dreves v New York Power Auth.* (131 AD2d 182, *lv dismissed* 71 NY2d 889). The petitioners in *Dreves* challenged, *inter alia,* a resolution passed by New York Power Authority's Board of Trustees in February 1984 approving and funding the construction of a microwave tower in St. Lawrence County. We concluded that although New York Power Authority had indeed violated SEQRA by approving and funding a type I action without first conducting an environmental analysis, that violation had been cured by subsequent SEQRA review, thus distinguishing *Dreves* from the Court of Appeals' decision in *Matter of Tri-County Taxpayers Assn. v Town Bd.* (55 NY2d 41, *supra; see, Matter of Dreves v New York Power Auth., supra,* at 186, n 1). As to the Statute of Limitations issue, we held that the petitioners in *Dreves* first became aggrieved in February 1984 when New York Power Authority passed the subject resolution and continued to be aggrieved until a negative declaration was issued, at which point "the determination became final and binding and petitioners had four months remaining within which to assail the sufficiency of the declaration or the prior SEQRA violation" *(supra,* at 186). It is therefore readily apparent that the School District violated SEQRA by seeking voter approval of the bus garage project before the environmental review process was completed and that plaintiffs were aggrieved by that action *(see, supra,* at 185-186). It is equally apparent, however, that the Statute of Limitations began to run with the issuance of the negative declaration for the bus garage project on February 21, 1990 and, accordingly, any challenge to the negative declaration or the School District's prior SEQRA violation had to be commenced within four months of that date *(see, supra,* at 186).

Our inquiry does not end here, however, for we cannot ignore the fact that the Department subsequently reopened the SEQRA review process, issued positive declarations and directed the preparation of a FEIS for both projects. We must therefore determine what effect, if any, the reopening of SEQRA review had on plaintiffs' action.

It is well settled that the mere reconsideration of an otherwise final agency determination will not extend the period of limitations within which to seek review of the determination *(see, Matter of Seidner v Town of Colonie, Bd. of Zoning Appeals,* 79 AD2d 751, 752, *affd* 55 NY2d 613; *see also, Matter of Rapuzzi v City of New York, Civ. Serv. Commn.,* 161 AD2d 715, 716, *lv denied* 76 NY2d 707). Where, however, the agency "agrees to hold a new hearing at which new testimony is taken, new evidence is proffered and new matters are considered" *(Matter of Delbello v New York City Tr. Auth.,* 151 AD2d 479, 480), or reconsideration of the matter "appears to have been a fresh, complete and unlimited examination into the merits" *(Matter of Camperlengo v State Liq. Auth.,* 16 AD2d 342, 344), the statutory period within which to commence a review proceeding is renewed *(see, Matter of Corbisiero v New York State Tax Commn.,* 82 AD2d 990, *affd* 56 NY2d 680). We are of the view that the reopening of the SEQRA review process constituted a fresh and complete examination into the environmental significance of both the school building and bus garage projects and, therefore, the statutory period within which plaintiffs could challenge any declaration resulting therefrom is renewed. The more perplexing question is whether the policy considerations underlying SEQRA revive, as well, plaintiffs' challenge to the subject referendum.

In *Matter of Tri-County Taxpayers Assn. v Town Bd.* (55 NY2d 41, *supra),* the Town of Queensbury adopted a resolution authorizing the establishment of a sewer district, subject to voter approval at a special election. The voters approved the project and the petitioners thereafter commenced a CPLR article 78 proceeding seeking to have the special election declared null and void on the ground that the Town failed to prepare and file an environmental impact statement. This Court was unanimous in its conclusion that SEQRA had in fact been violated but was divided as to the appropriate remedy; the majority declined to annul the special election, reasoning that "it would serve no useful purpose to undo what ha[d] already been accomplished", and directed that the Town comply with SEQRA before taking any further steps on the project *(Matter of Tri-County Taxpayers Assn. v Town Bd.,* 79 AD2d 337, 339, *mod* 55 NY2d 41, *supra).* On appeal, with the only issue being the nature of the remedy available, the Court of Appeals reversed and declared the special election null and void. In so doing, the Court concluded that "SEQRA commanded the preparation and filing of an environmental im-

pact statement for public inspection *prior to* the special election" *(Matter of Tri-County Taxpayers Assn. v Town Bd.,* 55 NY2d 41, 47, *supra* [emphasis supplied]; *see, Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359, 368-369; *Matter of Programming & Sys. v New York State Urban Dev. Corp.,* 61 NY2d 738, 739).

We recognize that the challenge brought by the petitioners in *Matter of Tri-County Taxpayers Assn. v Town Bd. (supra)* was timely and, therefore, the Court of Appeals did not address the precise issue presented here. The Court, however, based its decision upon the need for strict compliance with the stated requirements and objectives of SEQRA and, upon review of those requirements and objectives, we are persuaded that plaintiffs are entitled to a new vote here.

ECL 8-0109 (4) provides, in pertinent part, that "[a]s early as possible in the formulation of a proposal for an action, the responsible agency shall make an initial determination whether an environmental impact statement need be prepared". Assuming that inquiry is answered in the affirmative, the lead agency or the applicant must prepare a DEIS, the purpose of which "is to relate environmental considerations to the inception of the planning process, to inform the public and other public agencies as early as possible about proposed actions that may significantly affect the quality of the environment, and to solicit comments which will assist the agency in the decision making process in determining the environmental consequences of the proposed action" *(ibid.).* The information contained in an environmental impact statement, which must include the environmental impact of the proposed action and a description of the reasonable alternatives available *(see,* ECL 8-0109 [2]; 6 NYCRR 617.14), forms the basis for deciding whether to proceed with the proposed action, and ECL 8-0109 (2) requires that such statements "be clearly written in a concise manner capable of being read and understood by the public". As the Court of Appeals has concluded, "there can be little doubt that SEQRA command[s] the preparation and filing of an environmental impact statement for public inspection prior to [an] election" such as the one held here *(Matter of Tri-County Taxpayers Assn. v Town Bd.,* 55 NY2d 41, 47, *supra);* to allow voters to cast their votes at a time when they did not have the benefit of an environmental impact statement would clearly frustrate the objectives of SEQRA *(supra,* at 47).

■ Having concluded that plaintiffs' action is timely, we

must next consider whether plaintiffs have standing. "It is now well established that the conferral of standing to challenge governmental actions involving land use, on SEQRA grounds or otherwise, requires a showing that the challenger will suffer *direct* harm, that is, injury which is in some way different from that of the public at large" *(Matter of Schulz v New York State Dept. of Envtl. Conservation,* 186 AD2d 941, 942 [emphasis in original]; *see, Society of Plastics Indus. v County of Suffolk,* 77 NY2d 761, 774-775). It appears that each of the respective plaintiffs draws his or her water supply from a well located in close proximity to the proposed bus garage site *(see, Matter of Friends of Woodstock v Town of Woodstock Planning Bd.,* 152 AD2d 876, 878) which, the School District has acknowledged, lies within a critical environmental area; we are therefore satisfied that plaintiffs have shown an injury that is different in kind and degree from that of the public at large.

◼ The remaining issues raised on appeal do not merit extended discussion. With regard to the Commissioner's argument that plaintiffs' action should be dismissed for failure to exhaust administrative remedies, we noted at the outset that plaintiffs are not challenging the validity of the May 1989 referendum per se. Rather, their argument rests on a failure to comply with the timing requirements of SEQRA. Accordingly, Education Law § 2037, which provides in pertinent part that "[a]ll disputes concerning the validity of any district meeting or election * * * shall be referred to the commissioner", has no application here and the cases cited by the Commissioner are distinguishable.

◼ To summarize, we are of the view that plaintiffs' action is timely. The reopening of the SEQRA review process constituted a fresh and complete examination into the environmental significance of both projects *(see, Matter of Camperlengo v State Liq. Auth.,* 16 AD2d 342, 344, *supra),* thereby providing plaintiffs a new opportunity to challenge any declaration or SEQRA violation resulting therefrom. Moreover, even if we were to conclude otherwise, the holding in *Matter of Tri-County Taxpayers Assn. v Town Bd. (supra)* clearly requires that plaintiffs be afforded the benefit of the information contained in the FEIS *prior* to voting on whether to approve the school building and bus garage projects. Accordingly, plaintiffs are entitled to a new vote. We have examined the remaining arguments advanced by defendants and find them to be lacking in merit.

WEISS, P. J., MIKOLL, YESAWICH JR. and MERCURE, JJ., concur.

Ordered that the order is modified, on the law, with costs to plaintiffs, by awarding summary judgment to plaintiffs; it is declared that plaintiffs are entitled to a new vote on the subject projects following preparation and filing of the Final Environmental Impact Statements; and, as so modified, affirmed.