[633 NYS2d 229]

ROXBURY TAXPAYERS ALLIANCE et al., Appellants, v ROOSEVELT & CROSS, INC., et al., Defendants, and NATIONAL BANK AND TRUST COMPANY, Respondent. (And a Third-Party Action.)

Third Department, November 2, 1995

### APPEARANCES OF COUNSEL

*Jordan & Walster,* Roxbury *(Herbert Jordan* of counsel), for appellants.

*Haynes & Downey, P. C.,* Norwich *(James E. Downey* of counsel), for respondent.

### OPINION OF THE COURT

MERCURE, J.

On May 31, 1989, the voters of defendant Roxbury Central School District (hereinafter the school district) approved a resolution for alterations and additions to the school building, construction of a bus garage and the acquisition of four parcels of land, to be financed through the issuance of bonds at a cost not exceeding $7,983,000. A resolution for the issuance and sale of the bonds was adopted on June 21, 1989, and notice of the resolution was published in accordance with Local Finance Law § 81.00 on June 27 and 29, 1989. In August 1990, defendant National Bank and Trust Company (hereinafter defendant) purchased the school district's bond anticipation note (hereinafter the note) in the amount of $890,000. This note was paid off in July 1993.

The State Education Department (hereinafter the Department), in its capacity as lead agency for the proposed projects, had on February 21, 1990 issued a negative declaration of environmental significance under the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]). However, in view of subsequent revelations that the school district was located in a historic district and contiguous to a recreation area and that the bus garage site was in a newly designated

critical environmental area, the Department thereafter reopened SEQRA review, issued positive declarations and ordered the preparation of draft and final environmental impact statements (hereinafter FEIS) with regard to the school building and bus garage projects. Ultimately, reasoning that "[t]he reopening of the SEQRA review process constituted a fresh and complete examination into the environmental significance of both projects * * * [and] that plaintiffs [must] be afforded the benefit of the information contained in the FEIS *prior* to voting on whether to approve the school building and bus garage projects" (*Chase v Board of Educ.*, 188 AD2d 192, 199 [emphasis in original]), this Court set aside the result of the May 31, 1989 vote.

Plaintiffs, an association of taxpayers and individual property owners in the school district, thereafter brought this action, *inter alia*, against defendant for a declaration that its August 6, 1990 purchase of the note and the school district's subsequent repayment thereof were unlawful. As limited by plaintiffs' brief, the action against defendant is predicated upon the ground that the note was sold by the school district and knowingly purchased by defendant for the illegal purpose of restoring to the school district's general fund moneys which had been impermissibly depleted by prior unauthorized expenditures in connection with the subject projects. As against defendant, the ultimate relief sought by plaintiffs is an accounting and the return to the school district of the funds utilized to repay the note.

Defendant moved to dismiss the complaint against it, *inter alia*, as barred by the respective 20-day limitations periods of Local Finance Law §§ 82.00 and 84.00. Supreme Court granted the motion and plaintiffs now appeal.

We are constrained to reverse Supreme Court's order, deny defendant's motion and remit the matter to Supreme Court. In our view, neither section 82.00 nor section 84.00 of the Local Finance Law bars so much of plaintiffs' second cause of action as alleges "that the purpose of selling the note was to augment the district's general fund, which had been depleted by the prior, unauthorized expenditures for final plans and specifications, property acquisition and demolition" (¶ 23) and that the note was accordingly "unauthorized and unlawful" (¶ 27) because the bond resolution did not "authorize issuance of obligations for the purpose of covering unlawful withdrawals from the district's general fund" (¶ 27 [a]). Significantly, defendant does not argue that these allegations, if proven, would not

entitle plaintiffs to the relief demanded in the complaint as a matter of law.

We agree with plaintiffs' contention that Local Finance Law § 82.00 cannot be reasonably construed so as to bar a taxpayer's action based upon unlawful conduct in the actual issuance of a bond (as opposed to deficiencies relating to the resolution *authorizing* the bond issue) taking place subsequent to the expiration of that section's 20-day limitations period. To the contrary, the clear provision of Local Finance Law § 84.00, which specifically governs defects in the issuance itself, authorizes a taxpayer suit up until the expiration of 20 days following the actual purchase of the obligation, and then only if the purchase is made "in good faith and for fair value". For the same reason, we conclude that the decision in *Blomquist v County of Orange* (69 Misc 2d 1077) is inapposite.

We further reject defendant's position that it has established itself to be a "purchaser in good faith and for value" of the school district obligation and thus entitled to the benefit of Local Finance Law § 84.00 (*see, DH Cattle Holdings Co. v Reno*, 196 AD2d 670, 671; *DH Cattle Holdings Co. v Kuntz*, 165 AD2d 568, 570). Significantly, defendant's motion was brought under CPLR 3211 (a) (5) and (7) and was not converted to a motion for summary judgment. In fact, in his affirmation in opposition to the motion, plaintiffs' counsel pointed out that fact and stated that, in the event the court should choose to give notice of its intent to treat the motion as one for summary judgment, "plaintiffs will supplement their opposition accordingly". In any event, defendant did not support its motion with prima facie evidence of its lack of knowledge that the note was issued for an unlawful purpose. The affidavit of its senior vice-president merely identified and annexed a number of documents (solicitation of bids, bond counsel's opinion, litigation counsel's opinion and the note itself) which, if comprising the sole basis for defendant's knowledge, would have supported a belief that the note was issued for a lawful purpose. Notably absent, however, was any claim or evidence to support a finding that defendant received no other notice that the note was not being issued for a lawful purpose.

We are not persuaded by the parties' remaining contentions and expressly reject plaintiffs' argument that this Court's annulment of the vote on the bond resolution retroactively rendered the sale of the note unlawful.

CARDONA, P. J., MIKOLL, YESAWICH JR. and PETERS, JJ., concur.

Ordered that the order is reversed, on the law, with costs, and motion denied.